## CLINE *vs.* CALDWELL.

APPEAL FROM THE PARISH COURT OF NEW-ORLEANS.

Where the fact of usage is submitted to a jury and two verdicts are found in favor of a particular usage, their estimate of the testimony will be presumed to be correct.

18

EASTERN DIS.
*June, 1832.*

CLINE
*vs.*
CALDWELL.

The facts are stated in the opinion of the court, delivered by MATHEWS, J.

In this case, the plaintiff claims damages for an alleged breach of a contract entered into between him and the defendant, committed by the latter. The former being a rope-dancer by profession, made an agreement with the defendant, who is the manager of a theatre in New-Orleans, to play two engagements of six nights each, commencing on a certain day, &c. and as a compensation or payment for his performance, the manager agreed that the actor should share the surplus of each night's receipts, two hundred and fifty dollars being first deducted, and should be entitled to one clear half of the seventh and fourteenth nights for his benefit.

The petitioner alleges that this contract was subsequently so modified by consent of the parties, as to reduce the time of performance to one term of six nights and a benefit, which he was ready and willing to complete, but was prevented or excused from so doing by the conduct of the defendant, who refused to comply with his part of the agreement, and would not divide the profits as stipulated, &c.

In consequence of repeated trials of the cause in the court below, the record exhibits the verdicts of three juries, two in favor of the plaintiff and one for the defendant. The last verdict for the plaintiff, in which his damages were assessed at nine hundred dollars, is that on which the judgement from which the defendant took the present appeal is based.

The evidence of the case shows that the contract as above stated, was made in the city of New-York. That in pursuance thereof, the plaintiff came to New-Orleans and performed one night. On the second night of his performance, or some time during that day, he received a letter from the defendant, in which the latter offered to him the privilege of curtailing his engagement as many nights as he might think proper and to take his benefit earlier than was stipulated in the contract.

This letter bears date on the 20th of February, 1830. No written answer was given to it until the sixth of March

following, when the plaintiff acceded to the proposal of short-ening the time of performance, by omitting the last term of six nights and the benefit on the fourteenth, as agreed to in the original contract. In the mean time, the defendant seems to have changed his mind, and refused to modify the contract according to his proposition of the 20th of February. The testimony of several witnesses was taken to show, that on the very day of the proposed curtailment of the engagement the parties agreed, verbally, to the arrangement which would result from the correspondence between them as contained in their letters of the 20th of February, and sixth of March. The testimony on this subject is somewhat contradictory, but the whole taken together may fairly induce a belief that the original contract was so modified, by subsequent consent of the parties, as to reduce it to a single term of six nights and a benefit. Although this point in the cause was much debated during the argument, we are of opinion that it can have but little weight in deciding the present contest. Admitting the period for which the plaintiff stipulated to perform to have been shortened by mutual consent, the principles of the contract were not altered in any other respect. The main, if not the sole question in the case, must be solved by ascertaining which of the parties violated the contract, or in other words, which of them first failed to fulfil the obligations imposed on him? The principal stipulations in the agreement have been already stated; by these it appears that the defendant agreed or promised that the plaintiff should share the surplus of each night's receipts, two hundred and fifty dollars being first deducted, and that the latter should have one clear half of the profits of the nights allowed for his benefit.

It is contended on the part of the appellee, that this should be viewed as a contract of partnership. We, however, think it to be rather one of hiring of services, and in this respect it will be considered. The circumstance of the manner in which the actor was to receive remuneration or payment for his performances, by an allowance of a share in the profits

gained by them, although it makes a slight change in the ordinary contract of hiring for fixed and certain wages, does not create one essentially different. Overseers of plantations are frequently hired on the express condition of receiving in lieu of a certain salary, a portion of the profits arising from crops, &c., but on that account it is believed that they ought not to be considered as in partnership with the owners of the property used to produce the crops.

In the contract now under consideration, there is no express stipulation that the profits arising from the performances of the player, should be divided nightly between him and the proprietor and manager of the theatre. Whether the latter was bound to settle and divide or pay daily, is left doubtful by the terms of the agreement. Perhaps a just interpretation of the contract, independent of usage as applicable to such cases, would authorize the performer to demand payment of his earnings of each and every night, so soon as they were received by the promisor.

Where the fact of usage is submitted to a jury and two verdicts are found in favor of a particular usage, their estimate of the testimony will be presumed to be correct. The record contains contradictory evidence in relation to the custom and usage of theatres, as they regard contracts similar to that of the parties to this action. The verdicts of two juries being in favor of the plaintiff; and as the fact of usage was submitted to their consideration, it must be presumed that their estimate of the testimony favored the usage of daily payments in cases like the present. See L. C. arts. 58—61. Admitting this as true, the evidence shows that the defendant was the first to refuse performance of his promises under the contract; and rendered himself liable to all the consequences of such refusal, which the jury have estimated as having been injurious to the plaintiff to the amount of nine hundred dollars, and found a verdict accordingly. We discover nothing in this verdict and the judgement of the court below which can be considered as erroneous, except the allowance of interest on the amount adjudged. The demand was clearly unliquidated, and being such, no interest should have been allowed. See C. P. art. 554.

It is, therefore, ordered, adjudged, and decreed, that the judgement of the Parish Court be avoided, reversed, and annulled, and the verdict set aside; and proceeding herein to give such judgement as ought, in our opinion, there to have been given, it is further ordered, adjudged, and decreed, that the plaintiff and appellee do recover from the defendant and appellant nine hundred dollars, with costs in the court below; those of this court to be borne by the appellee.