The judgment of the court was pronounced by
Eustis, C. J.
The plaintiff alleges that in August, 1840, he signed an instrument purporting to convey certain lands situated in the parish of Concordia to Enos Fletcher, the defendant; that the instrument, which was in the form of a deed, was signed in the State of Mississippi; that the consideration acknowledged to have been received was $15,000 in cash; but the true consideration *407 Was the notes of the said E nos Fletcher, to be executed by him in favor of your petitioner; that the deed was not delivered, but was afterwards recorded by the plaintiff without his having received the notes, trusting in the good faith of the defendant who committed a fraud in withholding the notes. The petitioner prays that the said deed be annulled, or that the said defendant be decreed to execute his notes according to the agreement, with legal interest from the day of sale.
The defendant, under a general denial, admits a convej'ance of the lands and that the consideration mentioned in the deed was not the true one; but alleges that the only consideration for said conveyance was the price of $2 50 per acre for the land, payable at the date of four years irom the date of the deed; on which he has paid the plaintiff $1800, and should the sale of said land not be held to be valid and binding, then, and in that event, he asked for judgment against the plaintiff for the sum of $1800, with interest.
The judgment of the district court annulled the sale of the lands unless the defendant should pay to the plaintiff within ninety days from this date $15,000, with interest thereon at the rate of five per cent per annum from the 5th day of August, 1840. From this judgment the defendant has appealed.
The plaintiff, in his petition, addressed to the defendant the following interrogatories: 1. “What consideration did you pay for the transfer of the lands described in the deed of John Fletcher to you, dated August 5th, 1840 ? Have you ever given any consideration? 2. Did you or not agree to give your notes for $15,000 for said lands ? 3. Have you ever given said notes ?”
To these interrogatories the defendant answered. To the 1st: “ I paid nothing at the date of the deed, but I agreed to pay the sum of $2 50 per acre for every acre of said lands, at the expiration of four years from the date of said deed. I proposed to purchase the lands at this rate in the month of June, 1840, and in the month of August, 1840, the plaintiff accepted the offer, and executed and delivered the deed to respondent, which deed was recorded in the office of the parish judge of this parish. I have made sundry payments on account of the purchase of said lands. I have paid said plaintiff thereon in money. I have handed him and paid for him in goods and provisions. I have furnished him and family about seventeen or eighteen hundred dollars. I cannot state the exact amount, nor furnish all the particular items, in consequence of not having all the receipts and papers showing them. The trunk which contained those papers was left by me in the house occupied by John Fletcher, where it remained some time. When I got it from there I found it had been forced open, and most of those papers abstracted from it.” To the 2d: “ Affiant answers that he did not agree to give his notes for fifteen thousand dollars for said lands; but agreed to pay the sum of two dollars and fifty cents per acre for the land at the time, as above stated.” To the 3d: “ Affiant answers, No ; but I have always been ready and willing, and am now ready and willing to perform my part of the contract.”
The testimony of witnesses was offered, on behalf of the plaintiff, to contradict the defendant’s answers to interrogatories as to the facts of the amount and payment of the price. This evidence was objected to on account of its being in contradiction to the written act, and, also, that under our jurisprudence the plaintiff was bound by the defendant’s answers, and could not contradict them by verbal testimony. The case of Burk v. Hall, 3 L. R. 117, is relied upon in support of this second objection. W e deem it sufficient to observe in relation to the objections to the evidence, having for its object to disprove the statement in the deed of the payment of the consideration, that the instrument was a deed made in the *408 State of Mississippi, and that by the jurisprudence prevailing in that State we do not understand the party to be estopped by the recital in a deed of having received an amount of money as the price of property sold, but the recital is merely prima fade evidence of the fact which is open to be established by evidence. Greenleaf on Evidence, § 26, note, § 304. The instrument stands before us as a private writing, and we have always held that a receipt for money paid was not conclusive between the parties, but open to explanation by evidence.
We have seen that the allegation of the plaintiff, that the sum mentioned in the deed as the price of the land, was not paid, as is therein acknowledged, is conceded to be true; and we have seen in the defendant’s answers, what the price to be paid was, and how it was to be paid according to his statement. This statement, it is contended by the plaintiff, is disproved and the amount of $15,000 established to be the true price of the lands, and that the defendant having failed to pay the price, the plaintiff has aright to demand the rescission of the sale.
The evidence relied upon by the plaintiff to discredit the answers of the defendant on oath, are certain contradictory statements said to have been made by the defendant to witnesses or in their presence. The depositions of these witnesses taken under commissions, were received in evidence in the district court without any other objections than those we have noticed. They are before us, and it remains to be considered what weight they are entitled to.
The Code of Practice provides, art. 354, that the answers of the party interrogated are evidence, but do not exclude adverse testimony and may be destroyed by the oath of two witnesseses, or of one single witness corroborated by strong circumstantial evidence, or by written proof.
Before we proceed further, we cannot refrain from remarking upon the danger of this exceedingly unsatisfactory mode of assailing the credit of the party whom the plaintiff himself has made a witness, and whose conscience he has resorted to for the purpose of establishing his case. The plaintiff himself offered the answers of the defendant in evidence. The witness, whose statements are brought forward to impeach the credibility of the respondent, are not brought to testify in his presence, but are examiued at a distance under a commission, perhaps at a remote part of another State, and without the party most interested having it in his power to be present, or to exercise proper supervision over the taking of the testimony. A proceeding more liable to abuse than this scarcely finds place in a system which has for its object the protection of the character and property of the citizen. An ordinary witness in a civil suit is surrounded with proper and sufficient guards when his credibility is thus sought to be impeached in a court of justice.
The admission of evidence of the contradictory statement of a witness made to a third person on some former occasion, for the purpose of raising suspicions as to the truth of his testimony is not allowed, unless an essential pre-requisite has been complied with. Before the evidence can be admitted, the witness himself, whose testimony is thus sought to be impeached, must be first interrogated as to the supposed contradictory statements which are afterwards to be adduced against him. This proceeding is but an act of common justice to the witness. Before his credit is attacked, he should have an opportunity of explaining the conversation in which the statement was made, under what circumstances, from what motives, and with what design. In the Queen’s case, it was one of the questions submitted to the judges by the House of Lords, and the answer delivered by Abbot, C. J. is a full and complete exposition of the reason, nay the necessity of the rale, in the administration of justice. Queen’s case, Brod. *409 & Bingham, 314. According to the practice of the courts of Scotland, the credit of a witness cannot be impeached by proof of his having given an account of the matter on a former occasion. Phillips on Evidence, 293.
Mr. Greenleaf thus states the rule to be: “The credit of a witness may also be impeached by proof that he has made statements out of court contrary to what he has testified at the trial. Before this is done, it is generally held necessary, in the case of verbal statements, first to ask him as to the time, place and person involved in the supposed contradiction. ”
Every reason which gives an ordinary witness the benefit of the protection of this wise and salutary rule, applies with double force to the party whose answers on oath are sought to be discredited in this manner by his adversary, who first seeks the advantage of his testimony and finding it not to be as he expected, is thus permitted to destroy it. We are not aware of any means under our practice by which a party answering can be thus protected, but it certainly is necessary in cases of this kind, for the testimony establishing contradictory statements by the respondent to be received with caution, and examined and weighed under the severest scrutiny.
It is contended, that the depositions of the witnesses prove that the price agreed to be paid by the defendant for the lands was the sum of $15,000, for which his notes were to be given, and that the defendant, finding himself unable to pay the amount, proposed to re-convey the lands to the plaintiff. It being conceded that the price was not paid, and there being no allegation in the petition of any promise to re-convey, and the annulling the sale being asked on the ground of the non-payment of the price, and the prayer of the petition being in the alternative for the annulling the sale or the payment of the price, the evidence concerning the promise or obligation to re-convey would be liable to the objection taken by the counsel for the defendant, and ought to have been excluded. The testimony on this point we do not consider, however, as materially affecting the lights of either party as they are presented by the petition and answer.
The testimony of two witnesses is relied upon as disproving the answers of the defendant as to the price of the land. Dyson swears that he was present when the bargain was made for the land; that he heard what passed between the parties at the time. The defendant was to give $15,000 for the lands, and notes were to be given. Learned from the parties that a deed had passed for the lands, but was not to be delivered until the notes were givep. Defendant never executed the notes as he told witness, &e.
But the testimony of Dyson as a man of veracity is discredited 'by three witnesses residing in Claiborne county, Mississippi, where Dyson resided in 1843 and 1844. The testimony of three witnesses is relied upon as sustaining his character. Two residing in Adams county, Mississippi, testify fully in favor of it; but the third, Crossgrove, states that, from a knowledge of his character, he would believe him upon his oath in a court of justice. On -the cross-examination this witness says, that should Dyson tell him any thing when not on oath, he would not know whether it was true or not, as he, Dyson, is in the habit of telling extravagant stories. His general reputation for veracity is not good; he would not believe him on oath when testifying against his own interest. If called upon to testify against his prejudices only, the defendant would believe him.
The other witness, Richardson, was examined under a commission in the parish of Catahoula. This witness proves the plaintiff’s case from what he heard pass between him and the defendant in the house of the former, in 1843. The most important part of the conversation was overheard by the witness in an *410 adjoining room ; he relates also a conversation he had the next morning with the defendant pretty much to the same effect. No attempt'has been made to discredit the testimony of this witness. He appears to have had an unusual propensity to change his place of abode, having, in the thirteen years preceding 1846, had no less than eight distinct places of residence. He, during that time, resided in Little Rock, Arkansas ; in Miller county, Arkansas; in Jasper county, Texas; in the parish of Caldwell, in this State; in the parish of Catahoula; in Concordia; in Tensas; ¿apd again in Catahoula.
It would be impossible to refuse credit to the answers of the defendant, on the declarations of those witnesses. Supposing full effect be given to that of the last, it is but the testimony of one witness; that of the former, Dyson, we consider discredited even by the witness who has been offered in support of his character. There is no written proof against the answers: nor are there any strong circumstantial facts which corroborated the declarations of these witnesses. We think the circumstances tend to show a stat.e of things which the plaintiff has no interest in establishing, and which he has been at some pains to repudiate — which neither party attempts to explain, or on which the courtis asked to act. The evidence on this subject is not such as would authorize the court to notice it, but it is sufficient to prevent any favorable inference for the benefit of either of the parties litigant.
There is the testimony of a witness for the defendant who relates a conversation he had with the plaintiff, in which the pripp of the lands was acknowledged by him to have been .$2 $0 ap acre as related in the defendant’s answers.
The value of the land at ¡the time of the sale in 1840, would have been a strong circumstance in favor of the price of the land having been that claimed by the plaintiff, to wit, $15,000; but the very peeuljar relations between the parties at the time lead us to the conclusion, that the real value of the land was not the test of the price agreed upon ; and therefore, we are bound to take that disclosed in the answers of the defendant, as ye have no other guide.
The material evidence as to the points determined, is all taken under commission by deposition. The witnesses were not examined before the district judge before whom the cause was tried without the intervention of the jury. As the case was on paper before the district court, we'feel less reluctance in changing the judgment, which the result of our examination of the case compels us to do.
There can be no rescission of the sale, for there has been no default established on behalf of the defendant, and the plaintiff can only recover the price of the land with interest.
The judgment of the district court is therefore reversed; and it is ordered, adjudged and decreed, that the plaintiff recover from the defendant the sum of four thousand one hundred and twenty dollars and seventeen cents, with interest thereon a.t the rate of five per cent per annum, from the 5th day of August, 1844, until paid, wjth tb? ppsts jn fhe court below; those of this court to be paid by plaintiff.