## WILLIAM R. HALLET v. JAMES DESBAN.

*A community of profits is the criterion by which to determine the contract of partnership; but to render a party liable as a partner, he must share in the profits as principal, and not as a mere agent, factor or servant.*

APPEAL from the Fifth District Court of New Orleans, *Eggleston*, J.

*T. J. & A. G. Semmes*, for plaintiff and appellant. *Whitaker & Fellows*, for defendant.

VOORHIES, J. The plaintiff, a creditor of the firm of *J. B. Steel & Co.*, sues the defendant, who acted in the capacity of confidential clerk, book-keeper and agent of the firm, to render him liable as a partner, on the ground that his services as clerk and agent were remunerated by one-fourth of the net profits.

The question is, whether, notwithstanding the fact that, as between the partners, the defendant was a mere agent and subordinate, he can be held liable, as a partner, to third persons, to whom he has not appeared in any but the real capacity of clerk and agent. The plaintiff, it is proper to remark, states in his petition, "that the defendant, *James Desban*, ostensibly acted as the chief clerk and book-keeper of said *Steel* in his said business, but in truth and in fact, the said *Desban* was interested in the profits of said business, and was, in law, a dormant partner of said *Steel*, of which fact your petitioner was entirely ignorant."

As between the defendant and the firm of *J. B. Steel & Co.*, it is clear that the former was not a partner. There was no express or implied consent to that effect, and in truth, the stipulation was quite otherwise. "Partnership must be created by the consent of the parties." C. C. 2776; 11 An. 278, *Pickerel* v. *Fisk.*

The rule, with regard to third persons, concerning the liability of parties who have a share or proportion in the profits, is different when they appear as principals, or merely as agents, clerks, or factors. In the latter case, they are not responsible to creditors, but in the former, their liability invariably attaches. The 2784th and 2785th Articles of the Civil Code apply to the partners, and not to the class of persons whose services are remunerated by a proportion of the profits.

These Articles read:

C. C. 2784. "A participation in the profits of a partnership carries with it a liability to contribute between *the parties* to the expenses and losses, but, *the proportion,* like that of the profits, may be regulated by the stipulation of *the parties,* and, where they make none, is provided for by law."

C. C. 2785. "A stipulation that one of *the contracting parties* shall participate in the profits of a partnership, but shall not contribute to losses, is void, both as it regards *the partners* and third persons. But in the case of a partnership *in*

*commendam*, hereinafter provided for, the liability to loss may be limited to the amount of stock furnished."

These Articles evidently refer to those acting as *principals* in the contract of partnership, and not to such as are mere employees, whose exertions as such are stimulated by a share in the profits, without their being invested thereby with " any additional control over the affairs of the partnership, nor authorized to bind the house or firm, further than by the express consent of the partners, or an implied consent resulting from the nature of their employment."

Such has been the view taken upon this subject by our courts.

For instance, in the case of *Bulloc* v. *Pailhos*, reported in 9 La. 462. *Bulloc* had entrusted to *Pailhos* a quantity of goods for sale; the latter was to receive, by the articles of agreement, one-half of the profits on the goods, as compensation for his labor. The court said, " We think with the plaintiff that the defendant was not a partner, but an agent. He is so stated in the agreement. The property was not at joint risk. The share in the profits was the compensation he was to receive for his labor." 8 N. S. 174, *Bulloc* v. *Pailhos*.

In the case of *St. Victor* v. *Daubert*, 9 La. 317, the court again said, " Between the partners of a commercial house and a clerk who, in addition to his monthly salary, is allowed as a further stimulus to his industry, a share of the profits, we have no hesitation in deciding that this allowance does not constitute him a partner; it gives him no additional control over the affairs of the partnership, nor does it authorize him to bind the house, or firm, further than by the express consent of the partners, or an implied consent resulting from the nature of his employment. The person thus employed and rewarded has no right to retain the funds of the house, which employed him to collect them. *They must be supposed, until the affairs of the partnership are liquidated, to be provided for, and required to meet its engagements, and afterwards to reimburse the partners for their advances, before a division of the profits is made.*"

In the case of *Cline* v. *Caldwell*, the court remarked, " The circumstance of the manner in which the actor was to receive remuneration or payment for his performances, by an allowance of a share in the profits gained by them, although it makes a slight change in *the ordinary contract of hiring for fixed and certain wages*, does not create *one essentially different*. Overseers of plantations are fre quently hired on the express condition of receiving, in lieu of a certain salary, a portion of the profits arising from crops, &c.; but on that account it is believed that they ought not to be considered as in partnership with the owners of the property used to produce the crops." 4 La. 139.

The cases of *Bank of Tennessee* v. *McKeage*, 11 R. 136, and of *McDonald* v. *Millaudon*, 5 La. 408, are reconcilable with the above quoted decisions; for in both of them the parties appeared as principals, and not as employees or agents. In the case of *Lee et als.* v. *Bullard et als.*, the clerk, whose compensation depended on the profits, was held liable; but the court expressly states, " Besides this participation in the net profits, on several occasions he held himself out as a partner, and thus clearly rendered himself liable." 3 An. 462.

Judge Story says, " There may be a community of interest in the profits between the parties, without any community of interest in the property itself. But this participation in the profits will not (as we have seen) create a partnership between the parties themselves, as to the property, as well as the profits, contrary to their intentions. Nor will it necessarily create such a partnership in all cases, as to third persons.". . . . . . " Thus, if a party has no interest whatsoever in the

capital stock and as between himself and the other parties, *he has also no rights as a partner, or no mutuality of powers and duties, but is simply employed as an agent, and is to receive either a given sum out of the profits, or a proportion out of the profits, or a residuum of the profits beyond a certain sum, as a compensation for his labor and services, as agent of the concern, and not otherwise ; he will not be deemed a partner in the concern from that fact alone ; not a partner with the others* INTER SESE, *for that would be contrary to their intentions and objects, nor as to third per_ sons, because the transaction admits of a different interpretation, and may justly be deemed a mere mode of ascertaining and paying the compensation of an agent, as in a naked case of agency.* In such a case, it may be properly enough said, that the agent is entitled to a *share or portion in the profits, liquidated or unliquidated,* and, therefore, that he has, in a certain sense, *a community of interest therein* with the actual partners. But he does not participate therein as an owner *pro tanto,* or as possessed thereof *per my et per tout,* or as clothed with the rights, powers and duties of a partner. He has only a *limited interest* therein, either as entitled to a fixed sum, to be paid out of the profits, or as entitled to a lien thereon, or as possessed of an undivided portion thereof, as a tenant in common." Story on Partnership, § 32.

Chancellor Kent says, " A person may be allowed, in special cases, to receive *part of the profits* of a business, without becoming a legal or responsible partner." Vol. 3, p. 33. He also says, in speaking of the essence of the contract of partnership, " It is sufficient that *his interest in the profits* be not intended as *a mere substitute* for a commission, or in lieu of brokerage, and that he be received into the association as a merchant, and not as an agent." Vol. 3, p. 25.

Smith on Mercantile Law states, at page 40 :

" This community of profit is the criterion whereby to ascertain whether a contract be really one of partnership, for one partner may stipulate to be free from loss, and the stipulation will hold good as between himself and his companions, though it will not diminish his liability to strangers."

But this author adds further in explanation, that, " to constitute such a *community of profit* as is here intended, a partner must not only share in the profits of his companions, but must share in them *as a principal, i. e.,* he must not be a mere agent, factor, or servant, receiving, in lieu of wages, a sum proportioned to the profits gained by his employers, or a certain portion of a fund which includes the profits, but is not dependent on them for existence."

It is true, that it is laid down as a rule, " that if a servant or agent stipulate for a share *in the profits,* and so entitle himself to an account of them, he becomes, *as to third persons,* a partner, though in questions between himself and his employer, he would not be so considered." Smith, M. L. 43. The author then states, that this distinction is extremely fine, and quotes the following expression of Lord Eldon in *Ex parte Harper :* " It is clearly settled, though I regret it, that if a man stipulates that he shall have, as the reward of his labor, not a specific interest in the business, but a given sum of money, even in proportion to a given *quantum* of the profits, that will not make him a partner ; but if he agrees for a part of the profits as such, giving him a right to an account, he is, *as to third persons,* a partner."

The sum and substance of this doctrine is, that a *community of profits* is the criterion by which to determine a contract of partnership ; but the party must share in the profits *as a principal,* and not as a mere *agent, factor,* or *servant.* If, however, this agent or servant stipulates for a share of the profits, *so as to entitle*

*him to an account,* then he is held bound as a partner. But then it is necessary that he have clearly the right to an account, in order to place him on the same footing as a principal; and Chancellor Kent lays it down, " that the interest, however, in the profits, to render one responsible as a partner, must be such as will entitle him to an account, *and give him a specific lien or preference* in payment over other creditors." Vide Smith M. L. 44, (notes).

The English decisions on this subject are not so very uniform as could be expected, as will appear by the following quotations :

" To make a party liable to a third person, as a partner, he must either be in fact a partner, or must have held himself out as a partner." *Dickenson* v. *Valpy,* 5 M. & R. 126.

" An agent who is paid by a proportion of the profits of the adventure, is not therefore a partner in the goods." *Meyer* v. *Sharpe,* 5 Taunt. 74.

" If the agreement between the owner of a lighter and of his man had been, that the man, in consideration of working the lighter, should have received half the gross earnings, it would not have constituted a partnership, being only a mode of paying the man for his labor. Aliter, however, if the stipulation was for the net profits." *Dry* v. *Boswell,* 1 Camp. 329.

" A partner in a firm contracted to give his clerk one-third portion of his (the partner's) own share in the profits. The other partners knew of, and assented to the arrangement. *Held :* that this did not make the clerk a partner." *Holme's case,* 2 Lewin ; C. C. 256.

See also the cases of *Wist* v. *Small,* 1 Camp 331 ; *Benjamin* v. *Porteus,* 2 H. Black, 590 ; *Smith* v. *Watson,* 3 D. & R. 71 ; *Burnell* v. *Hunt,* 5 Jur. 650 O. B.; *Wilson* v. *Whitehead,* 10 Mee & W. 503.

The ground upon which is based the doctrine, that an agent who receives a share in the profits, as such, becomes liable to third persons, as a partner, is, " that those profits form a portion of the fund upon which creditors have a right to rely for payment," (*Pott* v. *Eyton,* 3 C. B. 32) ; and yet, if a clerk contracts *for the net profits, after the payment in full of all the liabilities,* he becomes liable as a partner,—whilst, if he gets a proportion of *the gross profits, without reference to the payment of the debts,* he escapes the liability of a partner ! This is on a par with the nice distinction, so much regretted by Lord Eldon, between a proportion of the profits and a sum equal to a given quantum of the profits. In other words, under this distinction, a clerk who gets from his employer, in payment of his services as employee, one-fourth of the net profits, is a partner, because he has a right to sue for an account ; but if he stipulates for a sum equal to one-fourth of the net profits, then he is not a partner, having no right to demand an account ! It will be conceded, that in either hypothesis, the clerk, in this State, would have the right to sue his employer, and to look into the accounts of the firm, for the purpose of ascertaining the amount due him. And, on the other hand, it is evident that, in neither hypothesis would he have the right to sue for a liquidation or dissolution of the firm or partnership. The truth is, that the employee's interest in the profits, where he is not, besides, a principal in the partnership, does not vest him with additional authority in the management of its affairs ; his responsibility is always the same, even as regards third persons.

Under this view of the case,—it appearing that the defendant was not in reality a partner, and did not hold himself out as such, and especially, that that was the plaintiff's own understanding at the time,—judgment must be rendered in favor of the defendant.

It is, therefore, ordered and decreed, that the judgment of the District Court be affirmed, with costs.

Hallet<br><i>v.</i><br>Desban.

Merrick, C. J., dissenting. This suit has been brought to charge the defendant as a partner of *J. B. Steel*.

The whole case turns upon the construction of a contract by which *Norman, Steel & Co.*, appointed the defendant in 1840, their confidential clerk and book-keeper, at a salary of $1200 per annum for two years, and made this further agreement, viz: " that from and after the expiration of said two years, and for and during the space and term of two years thereafter, that is to say, from the 3d day of November, 1842, until the 3d day of November, 1844, the said *James Desban* shall receive as compensation for his said services *one-fourth part of the entire net profits of the business of said firm*, and at the end of the said two years, that is to say, on the 3d day of November, 1844, the said *James Desban* shall have it in his option to remain for two years longer in his capacity aforesaid at the said compensation of one-fourth part of the entire net profits of the said firm."

*Norman, Steel & Co.*, dissolved partnership in July, 1843, and the business after this time was conducted in the name of *Steel* alone. *Steel* made his power of attorney to the defendant fully authorizing him to conduct his affairs, to draw bills of exchange and promissory notes, to sell and buy real estate and slaves, to lease, let and hire houses, to receive shipments of goods, sign customhouse bonds, grant mortgages, pledges, &c., &c.

*Desban* continued in the employment of *Steel* as clerk and book-keeper until 1854, under his agreement, to receive one-fourth part of the entire net profits of the business of said *Steel* for his compensation. During this period, *Steel* became indebted to the plaintiff for the loan of money in suit which was used in the business of the house.

Did this agreement of *Desban* to receive as compensation for his services as clerk and manager of the affairs of the concern, the one-fourth of the net profits of *Steel's* business, make *Desban* a dormant partner ?

The learned Judge of the Fifth District Court (who has been followed in his conclusions by a majority of the court,) after a very elaborate and able exposition of the authorities, was of the opinion that the contract partook more of the nature of the letting of industry, *locatio operarum* than partnership and that the defendant was not bound. It may be true, perhaps, that the defendant, as between himself and *Steel* was only a clerk ; that he was bound to conduct the business as *Steel* directed, and was entitled to no voice in the management of the affairs, and was liable to be discharged by *Steel* at any moment, saving his right to claim an indemnity if he were discharged without sufficient cause.

But on the other hand, the engagement has some of the elements of a partnership in this, the defendant with extensive powers of administration brought into the concern his industry against *Steel's* capital, and for this industry he was to receive one-fourth of the net profits. And he was subject to lose his entire services in case of loss.

The profits could not be ascertained until the debts were paid or deducted each year, and at the termination of his employment he had an action to compel *Steel* to account.

The contract we have to consider then partakes of the nature of letting, hiring and of partnership. Which shall control ? Under the civil and French law the contract would be construed with reference to third persons perhaps, as it would between the parties to the same, as the *locatio operarum.*

But the law of Louisiana must be consulted on this question. If the civil law prevails, the judgment of the lower court can be rightfully affirmed. If any other rules have been adopted they ought to be applied.

On the subject of what was intended by the Code in its reference to the commercial law, our predecessors said in 1833, that "when the tribunals of this country were first called upon to interpret this and a similar provision in our law, there was great doubt as to what laws and usages of commerce reference was there made. It was finally concluded, though not without hesitation, that they must have had in view the usages and laws prevailing in our sister States, unless these laws and usages conflicted with the positive legislation of Spain, or were in opposition to the local usages prevailing in Louisiana. Whatever difficulty attended this decision when first made, there can be none in following it now. A considerable time has elapsed since it was made public. Contracts almost innumerable have been executed in reference to it. Rights have been repeatedly adjusted under its authority. Property to a large amount acquired in relation to it; and stronger than all, the legislature of the State by their silence on the subject, have authorized the belief that the court correctly interpreted the previous expression of their will." The court concludes, "We must therefore look to the law merchant of the United States for the consequence attending acts such as are proved in this case on the defendant." *McDonald* v. *Millaudon*, 5 L. R. 408.

This decision has been considered as settling the law in relation to commercial partnerships from that day to the present time. See *Bank Tenn.* v. *McKeage*, 11 Rob. 136. *Pinton* v. *New Orleans and Carrollton Railroad*, 3 An. 30.

But on the particular question before us, it appears to be conceded that the current of authorities under the commercial law, are adverse to the pretensions of the defendant. Wherever a party receives a compensation for *services in the profits, as such*, or in other words, wherever the party can call upon his employer to account in equity for the profits there, by the commercial law he is bound towards third persons as a partner. *Vaugh* v. *Carver*, 2 Henry Black, 246-7. *Hisketh* v. *Blanchard*, 4 East, 146. 3 Kent, 25 note b, 4 ed. Story, 35.

The case at bar is precisely such a case, and the judgment of this court has just been demanded upon the settlement of the account of profits between these parties. *Desban* has demanded and received, as he was entitled by his contract, the one-fourth of the net profits.

He was entitled to this therefore as a principal, that is, he had a direct claim for the one-fourth of the net profits as such. He was not to receive a per centage upon the profits which would be but a mode of ascertaining the compensation, but he was entitled to one-fourth of the profits themselves. He was, therefore, a partner; for his compensation was, (in the language of Smith, in his mercantile law,) dependant on them for existence.

*Desban* was interested in the debts, for they had to be paid before his net profits could be ascertained, and his agreement bound him for a share of the losses, for if the concern was unsuccessful, he lost his entire services. He ran the risk of losing his labor, and *Steel* the risk of losing his capital. The case comes within the summary of the common law as laid down in the opinion of the majority of the court. Mr. Justice Story says that, "Where the agreement either expressly or by fair implication admits, that the parties are to share in losses as well as profits, that circumstance will ordinarily at common law be held to make them partners as to third persons, and in many cases also between themselves, upon the ground that such is the proper and essential accompaniment of a partnership, and that

it is inconsistent with the notion that the share of the profits is designed to be a mere remuneration for services," Story, § 55.

In another place he says, " The true meaning of the language on interest in the profits, *as profits*, (which has probably been borrowed from the subtle and refined statement of an eminent Judge,) seems to be, that the party is to participate indirectly, at least, in the losses as well as in the profits, or in other words, he is *to share in the net profits*, and not in the gross profits." Story, § 34.

As heretofore observed, it seems to be conceded, that if the case were to be governed by the rules of the commercial law that it would be with the plaintiff.

An examination of the authorities from the common law will not, I think, show that supposed inconsistency mentioned in the opinion of the majority of the court.

Of necessity in a commercial age, nice distinctions will always accompany the administration of justice, and courts have only to inquire whether such distinctions really exist, and in the event of their existence to enforce them.

I think I have shown that the commercial law has been recognized by our courts as the law of Louisiana, and that it is in plaintiff's favor.

If we examine such Articles of the Civil Code of 1825, as seem applicable to the case, we shall find that the provisions of the common law on this subject seem to have been adopted *ex industria* by the Legislature. They were not contained in the Code of 1808, and would seem to have been introduced for the purpose of rendering the law of Louisiana on this subject harmonious with that of our sister States.

Article 2772 declares that, " It is of the essence of this contract (partnership) that a profit is contemplated, and that each of the parties is to partake therein," * * * *.

Article 2784. " A participation in the profits of a partnership carries with it a liability to contribute between the parties to the expenses and losses. But the proportion, like that of the profits, may be regulated by the stipulation of the parties, and where they make none, is provided for by law."

Article 2785. " A *stipulation that one of the contracting parties shall participate in the profits of a partnership but shall not contribute to losses, is void, both as regards the partners and third persons*. But in the case of a partnership *in commendam* hereinafter provided for, the liability to loss may be limited to the amount of stock furnished."

Now, under our Code, the industry which the defendant was to furnish is of precisely the same dignity as money or any other capital. C. C. 2780. But if a capitalist had furnished money in any other form than *in commendam*, with an express agreement that he was not to be considered a partner, nor bound for losses, but should receive one-fourth of the profits, he would be held as a partner. Why should not the person whose only capital is his skill and industry, be subjected to the same liability particularly as he is daily violating the provisions of Art. 2820, which in no manner permits the partner *in commendam* to act as agents for the other partners?

The Civil Code, therefore, makes a participation in the profits the criterion by which we are to judge whether an individual is or is not a partner. The cases cited from our own reports and relied on by the defence, viz : *Bulloc v. Pailhos*, 8 N. S. 174 ; 9 L. R. 317, and 4 L. R. 139, were controversies between the parties themselves, and what was said by the court in those cases has no relation to third persons.

I have no doubt that the commercial law, as it stood at the time of the adop-

tion of the Code of 1825, is the law governing this case.    And as it was adopted by the Legislature, it must continue the same, until repealed by the power which gave it force and vigor.

In my opinion, the judgment ought to be reversed, and rendered in plaintiff's favor.