WILLIAM M. LAMBETH and another *v.* DAVID VAWTER and others.

Where the Clerk has neglected to deliver copies of the petition and citation of appeal to the Sheriff, to be served as required by art. 581 of the Code of Practice, on parties, residents of the parish, who were made appellees in the petition, further time will be allowed to have them cited.

The members of a private association, formed for the purchase of steamers, and the transporting of passengers and merchandize for hire, are commercial partners ; and

where the partnership has been dissolved, they. may be sued for a debt due by the association individually, or a part of them only, without joining the rest.

Commercial partners are bound, *in solido*, for the debts of the partnership towards third persons. Their responsibility is not limited to the interest they may have in the concern, though the extent of such interest was known to the party with whom the contract was made.

Where the members of a private association, formed for commercial purposes, have agreed that the affairs of the partnership shall be conducted by a president and directors, who are actually chosen, no individual partner can bind the firm. By choosing these officers, the partners have selected the administrators of the partnership affairs.

A master of a steamer has no authority to bind the owners farther than for the necessary expenses of the boat.

Admissions made after the dissolution of a partnership, by one who had been a member, are not binding on those who were associated with him.

APPEAL from the District Court of Natchitoches, *Boyce,* J.

GARLAND, J. In the month of October, in the year 1834, a number of individuals in the Parish of Natchitoches, agreed " to constitute themselves into a joint stock company, for the purpose of purchasing and running two steamboats, in the trade," from that place to New Orleans; and they agreed to pay the sums annexed to their names, for the aforesaid purpose. It was further agreed, that the management of the funds and boats should be confided to a president and four directors, to be elected by the votes of the stockholders, each share to be entitled to one vote, and the money subscribed, to be paid in various instalments from the time of the purchase of the boats. The defendants became subscribers to this company or association, and affixed to their respective names the sums for which they desired to become interested. Vawter subscribed for $6000 ; Lecompte for $500 ; Prudhomme for $100 ; Buard for $200 ; and others for various sums. An .election for president and directors was held, when Airey was chosen president, and Hopkins, Bossier, Cortes, and Vail, directors. These individuals signed a document, or power of attorney, in which they state, that an association had been formed by various merchants and planters, who had organized themselves under the style of the Natchitoches Steamboat Company, " for the purpose of convenience and facility in navigation." They state that stock, to the amount of $24,000, has already been subscribed, to be applied to the purchase of one or two substan-

tial and suitable boats for the trade. They then recite, that they have been elected President and Directors of the Company, and that they "duly authorize and Cmpower, Captain David Vawter to proceed to New Orleans, for the purpose of selecting, purchasing, and negotiating the payments for such steamboats as he may approve. We also, in behalf of the stockholders, obligate to fulfil and fully guarantee contracts made by Captain David Vawter, in the purchase of said boat or boats." With this authorization, a copy of the agreement of the stockholders, with their names, and the sums affixed to each, and letters to various commercial houses, Vawter proceeded to New Orleans, where he entered into the following agreement with the plaintiffs. "Under a power of attorney from the President and Directors of the Natchitoches Steamboat Company, and acting in virtue of said instrument, I hereby bind said Company to Messrs. Lambeth & Thompson, a commission of two and a half per cent., on their acceptance of the drafts drawn by the said Company on them, by me, as their constituted agent, at four, eight, and twelve months, viz : New Orleans, 24th November, 1834, at 4 months, favor C. S. Crane $5356 93 ; do., 8 months, C. S. Crane $5557 87 ; do., 12 do., $5775 84— $16,690 64, making sixteen thousand, six hundred and ninety dollars sixty-four cents, which payments the said Company are bound to meet at maturity, or before. Should the said Lambeth & Thompson have to come under a cash advance for said Company, in taking up said paper, they will be entitled to a further commission of two and a half per cent on the amount so advanced by them. Hereby agreeing to pay them the usual commission as agents of boat or boats while running. New Orleans, Dec. 2d, 1834. David Vawter, agent for Natchitoches Steamboat Company." The drafts mentioned in the foregoing agreement, were applied to the purchase of a steamboat called the Ouachita. In the month of January following, Vawter purchased another steamboat called the Romeo, to pay for which he drew drafts to the amount of $8000, on the plaintiffs, which he signed as the agent of the Company, which were accepted. He also continued to draw drafts for large amounts, as the agent of the Company, on the plaintiffs, up to the month of August, 1835, without having

any written authority other than what has beeen stated, nor any verbal power, so far as the record presents the case to us.

This suit is brought to recover the balance of an account for $6860 96, the items of which consist of the bills or drafts mentioned in the agreement, and others drawn since; of charges for commissions, for acceptances, and advances; of cash paid, of interest at the rate of ten per cent on the various sums, and of other charges, to a very large amount. The credit side of the account shows large payments, amounting to much more than the drafts given in payment for the steamboats Ouachita and Romeo, and the only one drawn by the President of the Company.

The defendants pleaded the general issue. They denied the authority of Vawter to draw the drafts, or to incur the expenses charged against them, also the right of the President and Directors to delegate any such authority to Vawter. They allege further, that they are not bound beyond the amount of their respective subscriptions; and, finally, plead the prescription of one, three, and five years.

The inferior court, after hearing the parties, was of opinion that the plaintiffs had satisfactorily established their account, but held that the defendants were not responsible as commercial partners, but as joint obligors, or to use the language of the Judge, that " they are only bound to the plaintiffs in the proportion for which they subscribed, and as the whole stock of $24,000 is to the debt of the plaintiffs, so is the responsibility of each subscriber for the sum annexed to his name ;" and he gave a judgment accordingly, from which the plaintiffs have appealed.

In this court, the defendants Vawter and Cortes pray, that the appeal as to them may be dismissed, on the ground, that they have not been cited; and the defendants Prudhomme, Lecompte, Buard and Vail, also move to dismiss it, on the ground, that the appellants have not brought into this court all the defendants against whom they obtained judgments.

As to the motion of Vawter and Cortes, it cannot prevail. They were made appellees in the petition of appeal, which petition was filed with the Clerk, whose duty it was, under art. 581 of the Code of Practice, to deliver a copy thereof, with a citation to the Sheriff of the parish, to be served on the appellees. It is not shown that

the appellants prevented the Clerk from doing his duty.   The appeal has been recently taken, and we think as to these appellees, further time ought to be allowed to have them cited.   If the appellees were residents of a parish different from that in which the suit was pending, it might probably be the duty of the appellants to furnish the Clerk the necessary means to forward the petition and citation, but it is not necessary to decide that at present.

The ground of dismissal urged by Prudhomme and others, involves the question in what way the partners are bound, whether, *in solido*, or as joint obligors.   If the subscribers to the Natchitoches Steamboat Company are only bound for the sums respectively subscribed, they are joint obligors, or partners, *in commendam ;* if they are responsible as commercial partners, they are bound, *in solido ;* and any, or all of them, may be sued for the debts of the firm, and it is no more necessary to make them all parties to the appeal, than to the original suit, it being shown that the partnership is dissolved.

The Civil Code, art. 2796, says, that commercial partnerships are such as are formed, among other purposes, " for carrying personal property for hire, in ships, or other vessels."   By reference to the agreement subscribed by the parties, this appears to have been the sole object of their association.   In 17 La. 85, we said, that the owners of a steamboat, transporting passengers and carrying merchandize for hire, are commercial partners, and may be sued individually, or a portion of them, for a debt due by the boat, without joining all the parties in the action.    8 Mart. N. S. 390 ; 4 La. 50, 107.    These authorities appear to us conclusive ; but if more are necessary, they can be found in any elementary treatise on partnership, and in the decision of this court in 4 La. 140, where it was held, that if a party shares in the profits of a partnership, he is responsible for its debts, although his name be not in the firm.    Gow on Partnership, p. 15, 16, ed. 1830. But it is stated by the District Judge, that as Vawter, when he applied to the plaintiffs to accept the drafts, and showed them his power of attorney, also exhibited to them the articles of association, the list of subscribers, and the sums subscribed by each, they knew how much each party put into the concern, and that

consequently, as to them, the defendants are bound for no more ; and he relies upon Gow on Partnership, (p. 163—4 ed. 1830,) who says, very correctly, "that if a person with whom a single partner deals, is, at the time, conscious of the misconduct of that partner in pledging the joint name to a separate transaction, he cannot enforce against the firm any claim that may arise to him out of such dealings. Nor can he call upon the firm to fulfil a contract which has been made by one partner, if he be privy to a private agreement between the partners themselves, the effect of which is to throw the responsibility upon the single partner alone." We are unable to see what application these principles have to this case. Vawter was not pledging the Company for a separate or private transaction of his own, nor were the plaintiffs privy to any agreement, nor did there exist any such, by which the responsibility was to be thrown on one or more of the partners. When the plaintiffs saw the agreement or subscription, knowing, as we are to presume that they did, what the law is, they knew that the parties were commercial partners, and therefore bound, *in solido*, for the contracts of the Company. The responsibility of commercial partners towards third persons, is not limited by the interest they may respectively have in the capital stock of the concern. It often happens, that their interest is unequal; and it is well known, and cannot be doubted, that all are bound, *in solido*, for the debts of the firm to third persons. We are, therefore, of opinion, that, as to the last named defendants, the appeal ought not to be dismissed. 13 La, 303, 281.

The court below was of opinion, that the authority of Vawter to draw the drafts annexed to the account was sufficiently shown, or subsequently ratified by the President and Directors of the Company; that the charges for interest were usual, and had been paid; and that the commissions were sanctioned by the agreement made in December, 1834; and finally, that the account was sufficiently established. We are of a different opinion. The power of attorney given to Vawter, only gave him authority to purchase one or more steamboats, and to negotiate for the payment for them, Under it, we think he had a right to draw the drafts mentioned in the agreement to pay for the Ouachita, and the two for $4,000 each, to secure the price of the Romeo. No authority is shown

by the parol evidence, that authorized Vawter to draw drafts on the plaintiffs, in the name of the Company.   The fact of his being the master of one of the boats, and having acted as the general agent of the  Company, conferred no such authority.   The plaintiffs gave no notice to the Company of the acceptance made of Vawter's drafts, except the three first ; and late in the summer of 1835, we find the President asking for an account current, and saying that Vawter had received money from them, which the Company knew nothing about.   Vawter, as a partner, was not authorized to bind the firm, as it was agreed that a President and Directors should be elected, and they were actually chosen.   By choosing these officers, the partners had selected the administrators of the partnership affairs, and given them power to act for them.   They had a right to employ necessary agents and servants to transact the business ; but to draw drafts and bills required a special authority.   He was neither President or Director.   As master of the boat, he had no right to bind the Company, any further than for necessary expenses ; and it is not shown that the drafts were drawn for such purposes, except one for $1223 35. As further evidence of the idea of the Company as to the authority to draw bills and drafts, we find that the President had to obtain the authority of the Directors, to draw the only bill signed by him.   We are of opinion that neither as agent, partner, or master of the steamboat, had Vawter any right to draw the bills and drafts annexed to the account, except those given in payment for the steamboats Ouachita and Romeo, and the draft in favor of Salter & Marcy, for $1223 35 ; and we think the plaintiffs cannot recover on them, unless they can show that the President and Directors subsequently ratified the acts of Vawter, whilst they were authorized to act as such, or that the defendants, since the dissolution of the partnership, have done so, or that the proceeds of the drafts enured to the benefit of the Company.

The plaintiffs' counsel contend, that the depositions of Harding, their clerk, with the testimony of Airey, Cockerille, and Ogden, sufficiently prove the account.   We think not.   Cockerille seems to know nothing about the correctness of the account.   It is true that Harding swears to its correctness ; but we consider his testimony as entitled to no weight, as it appears that he was

not in the employment of the plaintiffs at the time the drafts were drawn, nor even in the country. It is clear, that he swears to what he found in the books of the plaintiffs, without any personal knowledge of their correctness. The books are no evidence against the defendants, and the deposition of Harding can have no effect against them.

The testimony of Airey relates to the agency of Vawter, which he proves only to have been a general one. He also made various admissions to Ogden, of a very vague and general character, in relation to the account, not sufficient, we think to sustain it. Ogden's testimony consists entirely of the admissions made by Airey, the former President of the Company, which the latter admits to be true. But all these admissions were made after the dissolution of the Company by the destruction of one of their steamboats, and the sale of the other. Civil Code, art. 2847. His admissions are, therefore, not binding on the defendants. 6 La. 683; 8 La. 568; 4 La. 32; 5 Mart. N. S. 324.

As to the charges of interest at the rate of ten per cent per annum, they are not sanctioned by law, as there is no written agreement to pay interest at that rate ; nor are the plaintiffs entitled to charge two and a half per cent for cash advances, except on such as may have been made on the three drafts mentioned in the written agreement. The charges of two and a half per cent for accepting the drafts which Vawter was authorized to draw, are correct, and those for commissions as agents of the steamboats.

It further appears, that one of the drafts charged, is drawn by a person named Daly. It seems that he was a clerk of one of the steamboats ; but no authority to him to draw drafts or bills, which will bind the defendants, is shown.

From the credit side of the plaintiffs' account, it appears that a larger amount has been paid them, than that of the items of their account which have been proved ; but as it may be in their power to show that the acts of Vawter, in drawing all the drafts were ratified, or that their proceeds enured to the benefit of the Company in which the defendants were partners, we think justice requires, that we should only give a judgment of nonsuit against the plaintiffs.

The judgment of the District Court is, therefore, annulled and

reversed, and a judgment of nonsuit given against the plaintiffs, with costs in both courts.

*Brent* and *O. N. Ogden*, for the appellants.

*Sherburne, Dunbar, Hyams* and *Elgee*, for the defendants.