On Application to Amend the Judgment.
MONROE, J.
In the opinion heretofore handed down, the court reaches the conclusion that plaintiff, as owner of the timber unlawfully converted by defendant, is entitled to the profit resulting from the change made in the form or condition of the property, and that defendant, as a possessor in legal bad faith, cannot reasonably expect anything more than reimbursement of the expense incurred in making the change; or in other words, that plaintiff is entitled to recover-the value of its timber, as converted and manufactured by defendant, less the cost of logging and manufacturing the same; and the concluding paragraph in the statement of the case, which was carried into the judgment, gives that value and cost and arrives at the amount to be awarded plaintiff by substracting the one from the other, as follows, to wit:
Total value of 6,000,000 feet manufactured into cross-ties and lumber, as heretofore stated .................................$109,400 00
Total cost of logging and manufacture at $12.00 per M............................... 72*,000 00
Balance of profit........................$ 28,400 00
But the “balance of profit,” as ascertained by deducting $72,000 from $109,400 is $37,- *952 400, and not $28,400, from which it follows that the judgment gives plaintiff $9,000 less than it is entitled to, and less than, upon the face of the opinion, it was the intention of the court to award.
The opinion was handed down on May 16, 1912, and defendant applied for a rehearing, which was refused, on June 19th following. Defendant then obtained a writ of error, whereby the case was taken to the Supreme Court of the United States, where the writ was dismissed “for the want of jurisdiction,” and there was judgment decreeing “that said plaintiff recover against the said defendant, E. B. Williams Cypress Company, Limited, $2S0.50 for its costs herein expended, and have execution therefor.” The counsel who represented plaintiff was elected judge of the district court about the time or shortly before this court rendered its judgment, and his attention being, perhaps, somewhat distracted, he did not immediately detect the error which had been committed, and thereafter, in view of his election to the judgeship, other counsel were employed, by whom, on December 18th, an “application and motion” was filed in this court, in which, after reciting the error in question, it is alleged that the same is a clerical or mathematical error; that the decree or mandate in the case has never left this court, but is still under its control, action in the matter having been suspended by the writ of error, operating as a supersedeas, to the Supreme Court of the United States; that said writ was dismissed on December 9th and would shortly reach this court; and that, before sending its judgment to the district court for execution, this court should correct said error so as to make the judgment conform to the court’s expressed intention.
Wherefore mover prayed that the j udgment be amended and the amount awarded plaintiff correctly stated at $37,400. A copy of the motion was mailed by plaintiff’s counsel, on the day of its filing in this court, to the-counsel of record representing defendant, by whom it appears to have been duly received; and another copy was so mailed by the clerk of this court, together with a communication to the effect that the court desired to know defendant’s views in regard thereto. On January 27, 1913, counsel for plaintiff filed a further pleading to which was annexed a copy of the mandate of the Supreme Court of the United States, and asked that there be included in the amended decree, previously prayed for, the sum of $280.50, for which defendant was condemned by that tribunal. On February 7th following defendant came into court, through its said counsel of record, and objected to the manner of the notice, setting up that a judgment predicated thereon would be a taking of its property without due process of law, etc., and upon the same day reserving its rights, filed an answer, alleging that after the refusal of this court to grant the rehearing for which it had applied, and after the expiration of the term at which it was rendered, the judgment in question became final and passed beyond the court’s jurisdiction; that the alleged clerical error occurred, not in the judgment, but in the reasons for judgment; and that to grant the motion would be to deprive defendant of its property without due process of law, abridge its privileges and immunities as a citizen of the United States, and deny it the equal protection of the laws, etc.
Our law prescribes no particular form or manner of notice in a case of this kind, and our jurisprudence furnishes no precedent. Defendant, as a matter of fact, received ample notice and has appeared and answered, through its counsel, who have supplied us with an able and exhaustive brief upon the merits of the motion.
The question, then, is, Can the error complained of be corrected in the present condition of the case?
*954 Defendant cites articles 547, 548, and 609 ■of the Code of Practice as controlling authority, but those articles are found in part 11, under title 1, of that Code, the rubric and first article (article 124) of which read:
■“Proceedings to be observed in the prosecution of actions before courts of original jurisdiction.
“Art. 124. The rules of proceeding, contained in the present title, relate only to the district and parish courts of the state, when in the exercise of their ordinary jurisdiction. Special rules are hereafter established for courts of probate and justices of the peace.”
And special rules are also thereafter established under title 2, and the rubric, “Of proceedings in the Supreme Court of the ■state,” for the regulation of the proceedings in this court. As to the district courts (those in the parish of Orleans excepted), the Constitution (article 117) provides that they “shall hold continuous sessions during ten months of the year,” and the statutory law (Act 40 of 1904) applying to all the district courts provides that:
“All judgments rendered * * * [meaning definitive judgments] shall be signed within three days from the date of the rendition * * *: Provided that within such delay an application for new trial may be filed, and the granting of a new trial shall have the effect of setting aside the judgment signed within said three days: Provided, that judgment in confession may be signed at any time in open court.”
Article 547 of the Code of Practice (applying to all district courts) provides that:
“Judgments may be amended by the court, until after having been signed in order: (1) To alter the phraseology of the judgment, but not its substance; (2) to correct errors of calculation, as for instance, if more have been given than was demanded, or if the party in favor of whom the judgment was given had been ordered to pay the costs. Except in the cases above provided, courts can not alter their judgments ; but they may ex officio, direct a new trial in order to revise their judgments.
“Art. 548. A judgment, when once rendered, becomes the property of him in whose favor it has been given; and the judge can not alter the same, except in the mode provided by law.
“Art. 609. The nullity Tof a judgment appealed from] can be demanded on the appeal, only while the appeal is still pending and when the nullity is apparent on the face of the records.”
The final judgments of the district courts may, however, be reviewed in either of three ways, to wit: By appeal, certiorari, or action of nullity. On the other hand, the law governing the practice in this court does not require its judgments to be signed, and makes no provision for the correction of errors of any kind in such judgments after they have become “final,” which happens upon the expiration of the delay within which a rehearing may be applied for; but it contains no such stringent prohibitions against the correction of such errors as are applied by article 547 of the Code of Practice to the district courts.
The provisions of the Code of Practice and other statute law pertinent to the present inquiry are as follows:
“Art. 910. All the judgments or orders rendered by the Supreme Court shall be recorded at length by the clerk, in records kept for that purpose.”
Act No. 18 of 1879 amending and re-enacting :
“Art. 911. The judgments rendered by the Supreme Court at New Orleans shall be final after six judicial days shall have elapsed from the rendering of the judgment, and those rendered by the Supreme Court at other points where the court may be holden shall be final after three judicial days shall have elapsed from the rendering of the judgment. The parties shall have the right at any time within said delays fixed, to apply for a rehearing according to existing laws. The clerk shall deliver a copy of any final judgment to every person requiring it.”
Act No. 223 of 1908:
“That judgment rendered in the Supreme Court of the state shall become final and executory on the fifteenth calendar day after rendition, in term time and out of term time, unless the last day shall fall on a legal holiday, when the delay shall be extended to the first day thereafter not a legal holiday: Provided, that in the interval parties in interest shall have the right to apply for rehearing: Provided further in the recess of the court, the court shall have the right to dispose, at chambers, of applications for rehearing. Art. 915 (C. P.)„ No execution shall issue on the judgments of the Supreme *956 Court; but such judgments, whether confirming or reversing those appealed from, shall be sent back for their execution, to the inferior court, and no mandate need be directed to the latter for that purpose.”
Under the law as it now stands (Constitution, art. 88, amended pursuant to Act 137 of 1904 and Act 149 of 1906), this court sits continuously in New Orleans from the first Monday in October to the 30th day of June following, and holds its sessions nowhere else; and it will be understood, from the foregoing excerpts, that its judgments' become final without reference to the expiration of the terms at which they may be rendered, and solely with reference to the expiration of the delays within which applications for rehearings may be made and (C. P. art. 913) during which the court may keep such applications under advisement.
In the courts of the United States and of the other states of the Union, judgments are said to become “final” with the expiration of the term at which they are rendered, or, in the appellate courts, with the sending of the remittitur to the courts of first instance, where that takes place before the expiration of the terms at which the judgments of the appellate courts are rendered. Nevertheless, as we shall see, the courts of the United States, including the Supreme Court, and of most, if not all, of the stales, exercise the power to amend their judgments, with respect to certain matters, after the expiration of the terms at which they were rendered, and, where remittiturs have been sent down, recall them for that purpose. Since, therefore, the position of a common-law court with respect to the amendment of a judgment, at a term subsequent to that at which it was rendered, is similar to that of this court with respect to the amendment of a judgment after the expiration of the delay within which an application for rehearing may be made or is being considered, it may be well to inquire under what circumstances, with respect to what matters, and upon what, principle such action is taken by those-courts.
In the case of Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797, Mr. Justice Miller, as-the.organ of the court, after stating the general rule that all judgments are under the-control of the courts by which they were-rendered during the terms at which they were rendered, and the equally well-recognized rule that, after the terms are ended, all final judgments pass beyond the control of such courts, proceeds as follows:
“But to this general rule [referring to the last stated] an exception has crept into practice in-a large number of the state courts in a class of cases not well defined, and about which and about the limit of this exception these courts; are much at variance. An attempt to reconcile-them would 'be entirely futile. The exception,, however, has its foundation in the English writ of error, coram vobis, a writ which was-allowed to bring before the same court in which the error was committed some matter of fact which had escaped attention and which was. material in the proceeding. These were limited generally to the facts that one of the parties to the judgment had died before it was rendered, or was an infant and no guardian had appeared or been appointed, or was a feme covert, and the like, or error in the process through default of the clerk. * * In Pickett v. Legerwood,, 7 Pet. 147 [8 L. Ed. 838], this court said that the same end sought by that writ is now in practice generally attained by motion, sustained, if the court require it, by affidavits ; and it was added this latter mode had so far superseded the former in the British practice that Blackstone did not even notice the writ as a remedy. It is quite clear, upon examination of many cases of the exercise of this writ of error coram vobis, found in the reported cases in this country, and as defined in the case in the court above mentioned, and' in England, that it does not reach the facts submitted to a jury, or found by a referee, or by the court sitting to try the issue, and therefore does not include the present case. There has grown up, however, in the courts of law a tendency to apply to this control, over their own judgments, some of the principles of the courts of equity in cases which go a little further in administering- summary relief than the old-fashioned writ of coram vobis did. * * * It can easily be seen how this practice is justified in courts of the states where a system has been adopted which amalgamates the equitable and common-law jurisdiction in one form of action, as most of the rules of procedure do. * * * ”
*958 Beyond, or, perhaps, among, the errors, the power to correct which is thus attributed to the writ of coram vobis, it is universally conceded that every court has the inherent'power, without reference to statutory authority, to correct clerical errors in order to show what was actually done and thereby make its record conform to the truth, and the better opinion seems to be that a clerical error may be committed by the court, as well as by the clerk, and that a court may amend its record, not only to show what was actually done, but to incorporate in its judgment that which is necessarily or properly, and which was intended and understood to be, a part of it, and which failed to be so incorporated through the negligence or inadvertence of the court or the clerk.
We have made the following excerpts from works of recognized authority as supporting the view thus expressed:
•‘That part of the common-law rule which declares that no judgment can be amended after the term at which it was rendered can scarcely be said to survive in this country in all its original inflexibility. Divided between the policy of administering justice liberally and equitably and the habit of ascribing the utmost sanctity to a record, once completed, the courts have suffered exceptions to be introduced, which are of such importance as to require the rule to be much modified before it will apply to contemporaneous practice. * * * In the following sections we shall endeavor to show that, besides the correction of clerical errors, the courts have power, after the term, to supply omissions in a judgment and to reform and perfect it so as to make it conform exactly to the judgment intended to be given in the case; but that they cannot use the power of amendment to correct judicial errors or to enter a judgment which was neither, in fact, rendered nor intended to be rendered. * * *
“In regard to the power of amending judgments by supplying .omissions, it is necessary not to lose sight of the principle that the amendment can only be allowed for the purpose of making the record conform to the truth, not for the purpose of revising and changing the judgment. Hence, if anything has been omitted from the judgment which is necessarily or properly a part of it and which was intended and understood to be a part of it, but failed to be incorporated in it through the negligence or inadvertence of the court or the clerk, then the omission may be supplied by an amendment after the term. * * * Where a decree in a foreclosure proceeding, by inadvertence or mistake, omits a particular part of the land described in the mortgage and the findings, the court may amend the decree by including such land. * * *
“The power to amend nunc pro tunc not revisory in its nature, and is not intended to correct judicial errors. Thus it is error to-amend a judgment by' reducing the amount where the reason for the alteration is that the court has changed its mind; such action may bo taken as the means of correcting a miscalculation or other clerical error, but not to set right a judicial mistake. * * *
“If there has been an obvious error on the part of the clerk or the court in the entry of the amount recovered by the judgment, the entry may be amended to conform to the truth. * * * An appellate court may modify and change its orders before they become final, and may, even at a subsequent term, amend the record in respect of clerical errors and mistakes. Black on Judgments (2d Ed.) vol. 1, 153, 154, 159, 161.
“A mere clerical error, arising from inadvertence or the formal misprision of clerks or other officers, may always be corrected by the-court so as to make the judgment speak the truth, even after the term. The term ‘clerical error,’ as here used, must not be taken in too narrow a sense. It includes not only errors made by the clerk in entering the judgment, but also those mistakes apparent on the record, whether made by the court or counsel during the progress of the case, which cannot reasonably be attributed to the exercise of judicial consideration or discretion. * * *
“If anything has been omitted from the judgment which is necessarily or properly a part of it, and which was intended and understood to be a part of it, but failed to be incorporated in it through the negligence or inadvertence of the court or the clerk, the omission may be supplied by an amendment after the term. But on the other hand, if the proposed addition is a mere afterthought and formed no part of the judgment, as originally intended and pronounced, it cannot be brought in by way of amendment. 23 Oye. pp. 864, 869. -
“It is the general rule that the jurisdiction of an appellate court over a case ceases when the case has been determined and remanded to the lower court. After a case has been fairly submitted to an appellate court, and the court has regularly determined the issues involved and caused its judgment, in conformity with such determination, to be entered, and its judgment is properly entered, and the case is remanded to the lower court for such action as may be necessary, the jurisdiction of the appellate court terminates. * * •
“An appellate cburt has power to recall its mandate after it has been received in the court below, and to correct any error or irregularity therein, or an inadvertence in issuing it. In such case the remittitur is not recalled upon the theory that the appellate court can resume *960 a jurisdiction once lost, but upon the principle that an order made inadvertently may be treated as a nullity and the case considered as still pending in the court for the purpose of correcting the error, irregularity, or inadvertence.”
And the following cases are cited as supporting the doctrine so stated: Killian v. Ebbinghaus, 111 U. S. 798, 4 Sup. Ct. 698, 28 L. Ed. 593; Vance v. Pena, 36 Oal. 328; Wade v. Franklin First Nat. Bank, 11 Bush (Ky.) 697; Woods v. Roman, 5 B. Mon. (Ky.) 145; Finnell v. Jones, 7 Bush (Ky.) 359; State v. St. Gemme, 15 Mo. 219; Merriam v. Gordon, 20 Neb. 405, 30 N. W. 410; Livesley v. Johnston, 47 Or. 193, 82 Pac. 854; Krause v. Oregon Steel Co. (1907) 50 Or. 88, 91 Pac. 442, 92 Pac. 810; Underhill v. Jericho, 66 Vt. 183, 28 Atl. 879; Sears v. Seattle Consol. St. R. R. Co., 7 Wash. 286, 34 Pac. 918; Hill v. Hoover, 5 Wis. 386, 68 Am. Dec. 70; Lamoille Valley R. Co. v. Bixby, 57 Vt. 561; Wynn v. Wyatt, 38 Va. 584.
“In Titlow v. Cascade Oat Meal Co., 16 Wash. 676, 48 Pac. 406, a motion was made, after the remittitur had been sent down and filed, to recall the mandate and to correct the same so that the judgment would conform to the opinion of the court. An objection was made to the motion that the appellate court had lost jurisdiction of the case by reason of the remittitur having been transmitted to and filed in the lower court. The court said the presumption must be that the judgment is entered in accordance with the opinion of the court, and it would be a hard and unjust rule to announce that, if by inadvertence or mistake the judgment should be entered not in conformity with the opinion, the respondent would have no redress. We think that in all jurisdictions under a practice similar to ours the court has power to recall the remittitur and enforce the judgment according to the opinion rendered in the case.” Ott v. Boring, 131 Wis. 472, 110 N. W. 824, 111 N. W. 833, 11 Ann. Cas. 865, 867, note.
[1] In Bank of Kentucky v. Wister et al., 2 Pet. 318, 7 L. Ed. 437, the plaintiffs (who were defendants in error in the Supreme Court) had recovered judgment against the defendant (plaintiff in error) for a certain sum, as having been deposited in its bank, and the judgment was affirmed by the Supreme Court during the January term, 1829; the opinion of the court by Mr. Justice Johnson concluding with the words, “The judgment is affirmed, with costs,” after which follows the formal decree, apparently by the clerk:
“This cause came on * * * and was argued by counsel, on consideration whereof it is considered, ordered, and adjudged by this court that the judgment of the said circuit court in this cause be and is hereby affirmed, with costs.”
In Bank of Kentucky v. Wistar, 3 Pet. 431, 7 L. Ed. 731, the same case is reported as follows:
“Mr. Vinton moved to amend the judgment of this court rendered in this cause at the January term of 1829 (2 Pet. 318, 7 L. Ed. 437) by giving to the defendants in error damages on the judgment at the rate of 6 per cent, per annum, and that the judgment of the court be so reformed. Mr. Vinton stated that the mandate, though issued, had never been presented to the circuit court, and it was now in this court. Under these circumstances, and as the omission was a mere clerical error, he hoped the motion would prevail. Mr. Bibb, for the plaintiffs in error, objected to the amendment being made, as the whole subject was res adjudicata at the last term and was not now to be opened. The mandate was the solemn act of the court. * a: * TRe omission it is asked to correct was not a clerical misprision. * * * Mr. Chief Justice Marshall delivered the opinion of the court. * * * The court directs the amendment to be made, and the judgment of the court to be reformed, allowing interest at the rate of 6 per cent. The reason is that by a rule of this court, when there are no special circumstances, 6 per cent, interest is allowed upon the amount of the judgment in the court below; under special circumstances damages to the amount of 10 per cent, are awarded by the court. The omission is deemed by this court a mere clerical error.”
Apart from what appears on the face of the record (as published in 2 Pet.), it is evident that the clerk had no power' to determine whether the interest to be awarded was the 6 per cent, allowed under the rule of the court, or the 10 per cent, which “special circumstances” might have called for, and hence that the error in failing to allow any interest, which was held to be merely clerical, was the error of the court.
*962 In Rice v. Minn. & N. W. R. Co., 21 How. 82, 16 L. Ed. 31 (decided in 1858), it appeared that a writ of error was dismissed because the transcript failed to show that there had been a final judgment in the case, and that another transcript was filed at a, subsequent term, and the court was moved to set aside the judgment of dismissal and reinstate the case. In holding that the motion could not be granted, Taney, C. J., said:
“The suit is a common-law action for trespass on real property, and the judgment of the court below can be brought here for revision by writ of error only. That writ was issued by the plaintiff in error, returnable to the last term of this court; and it brought the transcript before us at that term. It was judicially acted on and decided by this court. And when the term closed, that decision was final so far as concerned the authority and jurisdiction of this court under that writ. The writ was functus officio; and, if the parties desire to bring the record of the ease again before this court, it must be done by another writ of error. * * * The case in 3 Pet. 431 [7 L. Ed. 731], relates to cases and questions of a different character from the one before us. In that case the judgment of the court at the preceding term was amended. But the amendment was made to correct a clerical error in this court and make the judgment conform to that which the court intended to pronounce. But this is not a motion to amend but to reverse and annul the judgment of the last term.”
It will be observed that the court does not say that the error in the ease in 3 Pet. was an error of the clerk, or that it was corrected in order that the record might show what was actually done, but that:
“The judgment of the court at the preceding term was amended * * * to correct a clerical error in this court and make the judgment conform to that which the court 'intended to pronounce.”
In Ætna Ins. Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395, the question was whether the circuit court could, at a subsequent term, incorporate in its record nunc pro tunc a special finding of facts upon which a judgment had been rendered at a previous term, when there had been no formal finding when the judgment was ordered, and in view of the law requiring it as a basis for the judgment. The court held that the record could be so amended, and in the course of its opinion said:
“It is familiar doctrine that courts always have jurisdiction over their -records to make .them conform to what was actually done at the time; and, whatever may have been the rule announced in some of the old cases, the modern doctrine is that some orders and amendments may be made at a subsequent term and directed to be entered and become of record as of a former term. In Rhoads v. Commonwealth, 15 Pa. 276, Chief Justice Gibson said: ‘The old motion that the record remains in the heart of the court only to the end of the term has yielded to necessity, convenience, and common sense. Countless instances of amendment after the term, but ostensibly made during it, are to be found in our own books and those of our neighbors.’ Even judgments may be corrected in accordance with the truth. * ;; * Generally it may be admitted that judgments cannot be amended after the term at which they were rendered, except as to defects or matters of form; but every court of record has power to amend its records so as to make them conform to and exhibit the truth. Ordinarily there must be something to amend by; but that may be the judge’s minutes or notes, not themselves records, or anything that satisfactorily shows what the truth was. Within these rules, we think, was the order made at September term that the special finding of facts and conclusions of law be signed by the judges and allowed conformably to the opinion, of the court theretofore filed, and that it, together with the order, should be filed nunc pro tunc as of April term and made part of the record. * * * The opinion, which was filed concurrently with the entry of the judgment contained substantially, almost literally, the same statement of facts, and relied upon it as the foundation of the judgment given;. True, that the opinion is no part of the record any more than are the judges’ minutes; but it was a guide to the amendment made, and it seems altogether probable it was intended to be itself a special finding of facts.”
In Elizabeth, etc., v. Am. Nich. Pavement Co., 131 U. S. cxlviii, Appx., 24 L. Ed. 1059, the court declined to amend, at a subsequent term, its decree of a preceding term, holding that the decree properly expressed the intention of the court and that there was no error to be corrected. But it was said:
“We have no doubt of our power at any time to amend a decree which has by inadvertence or mistake been entered in a different form from that in which we intended it. * * * *964 The motion, in fact, as now modified, is equivalent to a motion for a rehearing and cannot be entertained. The decree -is an exact conformity to our intention and must stand as it has been entered.”
In other cases to which we are referred, the different state courts by which they were decided have held as follows: Burke v. Mathews, 37 Tex. 73, that the only control which the Supreme Court has over its judgments, after the close of the term, is to correct clerical errors, mistakes, etc.
Drake v. Smythe, 44 Iowa, 410:
“As there can be no review of judgments entered here, it appears that the protection of parties and the right administration of justice demand that jurisdiction should rest in this court to correct or cancel judgments improvidently entered through mistake or oversight.”
Stewart v. Blue Grass Co. (Ky.) 121 S. W. 609: Where, on affirmance, appellee was entitled to 10 per cent, damages, as a matter of right, the omission from the judgment was a clerical mistake, corrected after the term, on motion.
Henlein v. Graham, 32 S. C. 303, 10 S. E. 1012: A clerical error of a judge, in entering judgment, may be corrected, if necessary, by his successor.
United States v. Fearson, 5 Cranch, C. C. 95, Fed. Cas. No. 15,081: The court will, at a subsequent term, correct a judgment entered for too large a sum.
Emison v. Walker (Ky.) 31 S. W. 461: Where a mistake in the amount for which judgment is rendered is clearly the result of miscalculation, the judgment may be corrected.
Hughes v. Hinds, 69 Ind. 93: Where a mistake has been made in computing the amount due on a note which has passed into judgment, the correction, depending merely upon calculation, may be made at a subsequent term.
In Lovett v. State, 29 Fla. 384, 11 South. 176, 16 L. R. A. 313, the plaintiff in error was prosecuted for a capital offense; his conviction was set aside by the Supreme Court; the case was remanded for new trial; and the remittitur was issued by the Supreme Court, and filed in the circuit court. Subsequently it was shown in the Supreme Court, on a motion, filed by the Attorney General, to vacate the judgment which had been rendered by that tribunal, that the transcript upon which it had acted, by reason of a mistake in its confection, fraud being imputed to no one, entirely misrepresented the record of the circuit court:
“Held, that the Supreme Court had not lost jurisdiction of'the cause, and its entry of judgment should be vacated, and the cause recalled and restored to its docket.”
In some of the cases to which we have thus referred the rulings are no doubt based, in whole or in part, on statutes, in others they are not. Additional authorities are to be found in. Cyc. Annotations 1901-1913, p. 2604, No. 864.
Returning now to the case before this court and to the law of this state as affecting the question here presented, it will be remembered that the Code of Practice provides that the judgments of this court shall be sent back for their execution to the inferior courts, but that the judgment in this case has never been so sent back; and we may add no application, so far as we are informed, has ever been made for a copy of the judgment for that purpose; the fact being that, when the motion now under consideration was filed, the execution of the judgment was suspended by a writ of error issued at the instance of defendant, and operating as a supersedeas. It will further be remembered that article 547 of the Code of Practice contains very specific prohibitions against any meddling by the district courts with their judgments which have become final, but that the law directs no such prohibitions against this court. And the reason may perhaps be found in the fact that errors in the *966 judgments of the district courts may be corrected by appeal, by action of nullity or by means of writs of certiorari which this court is authorized to issue, whereas, if the contention of the learned counsel for the defendant be well founded, not even a clerical error in a judgment rendered by this court can be corrected after the expiration of the delay allowed for an application for rehearing and its consideration, no matter how apparent the error may be or how disastrous or absurd its consequences; and as the law provides no method of revising the final judgments of this court, save as to federal questions, that contention is well founded if the law relating to those judgments is to be construed as applying to a pronouncement which has acquired the form and status of a judgment, not as the result of the judicial consideration which it received or by reason of the intention of the court, but in despite and contravention of such consideration and intention, and solely in consequence of an error in Subtraction, which we hold to have been clerical, or at least nonjudicial, because as the fact that apples fall to, and not from, the earth is established beyond judicial interference, so the facts that 2 + 2 = 4 and that a smaller number subtracted from a larger one leaves a certain, immutable remainder, the amount of which may be ascertained by the use of a mechanical device, are established, leaving no room for the exercise of any judicial function. The conclusion was reached in this case that plaintiff was entitled to recover the difference between $109,400 and $72,000, and the ascertainment of the figures which represent that difference was clerical work, and an error committed in the performance of clerical work appears to us to be a clerical error, no matter by whom committed.
The view thus expressed is supported by the ruling of this court in Mahony v. Mahony, 41 La. Ann. 135, 5 South. 645, in which it is held that an error of calculation is clerical, and by some of the authorities to which we have hereinbefore referred.
With respect to “transactions [which] have, between the interested parties, a force equal to the authority of things adjudged,” the law declares that:
“They cannot be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.” C. O. art. 3078.
With respect to the correction of an error in calculation in a judgment of this court; ■ .the law is silent. But our system of law is such as that referred to by Mr. Justice Miller when he says:
“It can easily be seen how this practice [the practice of correcting errors of a certain character in judgments, after, for other purposes, they have become final by the expiration of the terms at which they were rendered] is justified in courts of the states where a system has been adopted which amalgamates 'the equitable and common-law jurisdiction in one form of action, as most of the rules of procedure do.” Bronson v. Schulten, supra.
We have no separate courts vested with jurisdiction in equity, but our law contemplates that all civil courts shall, in proper cases, exercise such jurisdiction, for the Civil Code provides:
“Art. 21. In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. * * * ”
We therefore conclude that this court is vested with jurisdiction to amend its judgment heretofore rendered in this case as prayed for, and that the jurisdiction should be exercised.
It is accordingly adjudged and decreed that the judgment herein rendered on May 6, 1912, be so amended as to increase the amount ¿herein awarded from $28,400 to $37,400; the whole amount to bear interest as decreed in said original judgment. It is further decreed that, pursuant to the mandate of the Supreme Court of the United States, plaintiff herein have execution against de *968 fendant for the sum of $280.50 for its costs expended by reason of defendant’s application to said court.
BREAUX, O. J., dissents.