(101 South. 10)

No. 25791.

AMERICAN NAT. BANK OF SHREVEPORT v. RECLAMATION OIL PRODUCING ASS'N OF LOUISIANA et al.

(March 3, 1924; On Application for Rehearing, June 7, 1924.)

*(Syllabus by Editorial Staff.)*

1. Partnership ⬅146(1)—President and general manager of association constituting partnership held to have authority to execute notes on its behalf.

President and general manager of association, constituting a partnership, who signed checks, paid bills, and notes of the association, and made all contracts in its behalf, had authority to execute notes on behalf of the association.

**2. Partnership** ☞65 — **Whether partnership is commercial or ordinary partnership depends on intention of parties and nature of business.**

Whether a partnership is a commercial partnership, under Rev. Civ. Stat. art. 2825, or is an ordinary partnership under art. 2826, depends on the intention of the parties and the nature of the business carried on under the agreement.

**3. Mines and minerals** ☞97—**Association formed to reclaim abandoned oil wells held "ordinary partnership" and not "commercial partnership."**

An association formed for purpose of acquiring and operating certain patents, methods, formulas, and mechanisms for reclamation of abandoned or exhausted oil, gas, and water wells, and to purchase oil and gas leases and wells in order to carry out such objects, but which did not engage commercially in business of buying and selling oil, *held* an ordinary partnership, under Rev Civ. Code, art. 2826, and not "commercial partnership," under article 2825.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Commercial Partnership.]

**4. Mines and minerals** ☞48, 73—**Oil lease or oil well real estate.**

An oil lease or an oil well is not personal property but real estate.

**5. Appeal and error** ☞179(1) — **Fraud not considered as defense, where urged for first time in motion for new trial.**

The defense of fraud, urged for the first time in motion for a new trial, will not be considered.

**6. Bills and notes** ☞477—**Fraud as defense must be pleaded.**

Fraud as a defense in action on notes must be specially and specifically pleaded, or facts must be alleged from which the conclusions of fraud necessarily results; otherwise it cannot be proved.

On Application for Rehearing.

**7. Appeal and error** ☞1185 — **Clerical error may be corrected without rehearing.**

Manifest clerical error in failing to fix amount in recasting judgment of trial court may be corrected at any time without rehearing.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Suit by the American National Bank of Shreveport against the Reclamation Oil Producing Association of Louisiana and others. Judgment for plaintiff, and named and all except one of unnamed defendants appeal. Reversed and rendered.

Wilkinson, Lewis & Wilkinson, of Shreveport, and Dufour, Goldberg & Kammer and Ross E. Breazeale, all of New Orleans, for appellants.

E. W. & P. N. Browne, of New Orleans, for appellee.

By Division A, composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

ROGERS, J. This is a suit to recover the amount of two certain promissory notes, one for $4,000 and the other for $3,500, subject to a credit of $1,000. The notes are signed by the "Reclamation Oil Producing Association of Louisana, by J. E. Camatte, President, Vice President, and Secretary Treasurer."

Plaintiff, after alleging it was the holder, for value and before maturity, of the notes sued on, and averring demand for payment without avail, further alleged that the defendant association was organized for the purpose of buying and selling oil leases, oil and gas wells, and reclaiming oil and gas wells, and in general doing a general commercial business, and, as such, it was a commercial partnership, the individual members whereof were solidarily liable for the balance due on said notes.

All of the defendants, except J. E. Camatte, answered, denying generally the allegations of plaintiff's petition; denying that plaintiff was a holder for value before maturity; denying that J. E. Camatte was authorized to execute and deliver the notes on behalf of the defendant association; charging that the notes were given by Camatte in

part for his own debt; averring that defendant association was organized under a trust agreement which was duly recorded, and that the persons named therein were only trustees or agents of said association, and in no sense principals therein; denying that said association was engaged in a general commercial business; and alleging that, if decreed to be a partnership, it was an ordinary, and not a commercial, partnership.

The court below held the defendant association to be a commercial copartnership, and, accordingly, gave judgment against said copartnership and the individual members thereof individually and in solido for the full amount as prayed for by plaintiff.

The judgment against J. E. Camatte, who had failed to answer, was rendered upon confirmation of default previously obtained.

All of the defendants, excepting Camatte, have appealed.

The facts, briefly stated, are as follows:

In the spring of 1920 a so-called syndicate was organized under the name of the Reclamation Oil Producing Association of Louisiana, Louisiana unit. J. E. Camatte was selected as president and general manager, and offices were opened in the city of Shreveport. The concern was operated as the Louisiana unit of a Texas syndicate, having its main office in the State of Texas.

On November 4, 1920, the aforesaid Louisiana unit appears to have severed its connection with the parent organization, and was taken over by J. E. Camatte, G. R. Murrell, F. Renaud, D. W. Breazeale, and N. W. Collins as trustees of the Reclamation Oil Producing Association of Louisiana, under a trust agreement entered into by said parties on said date. Thereafter the business was operated under the name of the Reclamation Oil Producing Association of Louisiana.

No organization meeting of the newly formed syndicate was had, and J. E. Camatte continued to act as president and general manager, and D. W. Collins continued to act as secretary and treasurer, occupying the same offices as the former association in the city of Shreveport.

In January, 1921, Camatte, acting on behalf of the said Reclamation Association, entered into negotiations with one J. W. Pike for the purchase of a refinery situated near Oil City, La.

Pike offered to deliver the refinery to the association for a consideration of $10,000 cash, the payment of liens amounting to $1,500, the assumption of a mortgage of $30,000, and $125,000 to be issued in the stock of the Reclamation Association to Pike and his associates. This offer was accepted, but, as the association was without funds, it was decided that an attempt should be made to borrow the amount necessary for the cash payment from one of the banking institutions of the city of New Orleans. For this purpose Messrs. Camatte and Renaud visited said city, where they ascertained that they could only raise $7,000 on some collateral pledged by Camatte and on the indorsement by both Messrs. Camatte and Renaud. Of this amount $6,500 was forwarded to Shreveport to be turned over to Pike on account of the $10,000 payment, which was done. A note for $3,500 to cover the balance was also given to Pike. The association being in need of $4,000 to meet pressing obligations, Pike loaned it $4,000, receiving a note therefor. Subsequently D. W. Breazeale advanced the association $1,000 which was paid on account of the $3,500 note, leaving a balance due thereon of $2,500. Later on, Pike, to secure a loan, pledged these notes to the plaintiff bank.

[1] We do not find any substantial basis for the defense that Camatte was without authority to execute the notes sued on. The evidence shows that he acted as general manager and had entire charge of the business from its inception until the date of his

resignation, some time in May, 1921. During all of the intervening months he signed the checks, paid the bills and notes of the Reclamation Association, and made all contracts in its behalf. None of the other trustees took any part in the management of the business, and, as testified to by Mr. Breazeale, Mr. Camatte was considered as the president of the concern, and that "naturally the president of a concern is always looked to for its success."

The deal for the purchase of the refinery was made between Mr. Pike and Mr. Camatte, representing the Reclamation Association, and Mr. Camatte finally accepted title to the refinery as "president" of said association. All of the trustees were fully informed of the negotiations, and Mr. Renaud actually assisted in raising the money for the cash payment. Camatte's action in making the purchase was subsequently ratified by the other trustees.

There is nothing to show that the notes sued on were issued for the debt of Camatte. The note for $3,500, on which $1,000 was subsequently paid, was given to Pike in order to make up the difference in the cash payment of $10,000 required to be made under the contract entered into for the sale and purchase of the refinery heretofore referred to. The note for $4,000 was issued to Pike to cover a loan for that amount made with him by Collins, acting for the association, to take care of certain obligations which were pressing for payment at the time. This indebtedness was entered on the books of the association as being due the plaintiff bank.

The court having reached the conclusion that Camatte was authorized to execute the notes herein sued on, and that no part of the indebtedness represented thereby was his personal obligation, the next question presented for consideration is the extent of the so-called trustees' liability thereon.

Plaintiff alleges that they are liable as commercial partners, and defendants insist that they can be held only as members of an ordinary partnership.

There is no law in this state which authorizes the association of parties, under the management of trustees, to issue certificates of participation or stock, and to engage in commercial, manufacturing, or other business enterprises. The law does provide the conditions under which persons may conduct such enterprises—by the individual, by corporations legally formed, and by partnerships, which last, according to their objects, are divided into commercial and ordinary.

Obviously, the so-called trust agreement does not provide for the conduct of the business contemplated therein by an individual, nor is it pretended that said agreement constitutes a corporation. It merely created an unincorporated private association which is precisely on the same footing as to the liabilities of its members as other partnerships. Vigers v. Sainet, 13 La. 300; Lambeth v. Vawter, 6 Rob. 127; Williams v. Hewitt, 47 La. Ann. 1076, 17 South. 496, 49 Am. St. Rep. 394.

Article 2825 of the Revised Civil Code provides:

"Art. 2825 (2796). Commercial partnerships are such as are formed:

"1. For the purchase of any personal property, and the sale thereof, either in the same state or changed by manufacture.

"2. For buying or selling any personal property whatever, as factors or brokers.

"3. For carrying personal property for hire, in ships or other vessels."

Ordinary partnerships are all such as are not commercial. See article 2826 (2797), Revised Civil Code.

[2] Under these definitions the intention of the parties and the nature of the business carried on under the agreement determines the character of the partnership.

[3, 4] In the case at bar it is shown that the defendant association was formed for

the purpose of acquiring and operating in the state of Louisiana certain patents, methods, formulas, and mechanisms for the reclamation of abandoned or exhausted oil, gas, and water wells, and, in order to carry out these objects, to purchase oil and gas leases and wells. Only such oil as was acquired by the use of said patents and processes was sold. The association did not in any manner engage commercially in the business of buying and selling oil. Their enterprise was more in the nature of a mechanical employment, and persons associated in mechanical employments are not, as a general rule, commercial partners, even though they may, and generally do, so conduct their business as to be merchants also. Cowand v. Pulley, 11 La. Ann. 2. Neither did the avowed purpose of purchasing oil and gas leases and abandoned wells stamp the business as one established for the purpose of buying and selling personal property. An oil lease or an oil well is not personal property, but real estate. Hanby v. Texas Co., 140 La. 194, 72 South. 933.

Plaintiff contends that the purchase of the refinery, with the admitted intention of the parties to operate same, constituted a commercial partnership in so far as its demands are concerned. We do not so view it.

The evidence shows that the refinery was purchased for the sole purpose of refining defendant's own production from their own wells, and it was not their intention to purchase oil from, or to refine oil for, other persons. No oil was ever purchased, and the refinery was never operated.

It is our opinion, therefore, that the defendants must be held to be partners under the terms of their agreement, but only as ordinary, and not as commercial, partners.

[5, 6] In brief and in oral argument counsel for defendants have strongly argued a plea of fraud, apparently based upon the difference between the consideration agreed upon by Camatte and Pike, and that shown by the formal deed to the refinery herein referred to. We are unable to consider this plea for the reason that it was not set up originally as a defense to plaintiff's suit. It was urged for the first time in the motion for a new trial, made by defendants in the lower court. Fraud must be specially and specifically pleaded, or facts must be alleged from which the conclusion of fraud necessarily results, otherwise it cannot be proved. Neither of these requirements is met by the averments of defendants' answer.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment herein appealed from be set aside, and it is now ordered, adjudged, and decreed that there be judgment in favor of the American National Bank, of Shreveport, La., against the defendant copartnership, Reclamation Oil Producing Association, of La., and the individual members thereof, to wit, J. E. Camatte, D. W. Breazeale, N. W. Collins, F. Renaud, and George R. Murrell, each for the sum of $1,300 with interest at the rate of 8 per cent. per annum thereon from April 1, 1921, until paid, together with 10 per cent. additional on the sum of such principal and interest as attorneys' fees, his virile share of the obligations herein sued on, and one-fifth of the costs of the lower court. Costs of appeal to be paid by plaintiff and appellee.

On Application for Rehearing.

By the WHOLE COURT.

ST. PAUL, J. [7] The failure of this court in recasting the judgment to fix the amount for which the defendant Reclamation Oil Producing Association was condemned (about which there was at no time any controversy) was a manifest clerical error, which may be corrected at any time, and without granting a rehearing. State v. F. B. Williams Cypress Co., 132 La. 949, 61 South. 988, Ann. Cas.

1914B, 1290; Mahoney v. Mahoney, 41 La. Ann. 135, 5 South. 645.

For the rest the judgment against the association itself is correct.

As to the other defendants it is claimed that they are only a few out of many members of the defendant copartnership, each of whom is liable only for his virile share; but that was a matter of defense, as to which they should have made such proof in the court below as would have enabled this court to fix the virile share of each with some degree of certainty, and for which the evidence herein does not suffice.

I therefore recommend that the correction suggested be made, and a rehearing refused.

PER CURIAM. For the reasons assigned, the decree herein handed down. is now amended by inserting after the words Reclamation Oil Producing Association of Louisiana the amount of the judgment against it, to wit, "for the full sum of $6,500," and a rehearing is refused.