(107 So. 316)

No. 27606.

## GROVES & ROSENBLATH v. ATKINS.

### In re ATKINS.

(Jan. 4, 1926. On Motion to Amend Decree Feb. 1, 1926.)

*(Syllabus by Editorial Staff.)*

1. Exemptions ⬤➡48(3)—Whether workman is "laborer" within garnishment statute is determined by character of his work, not his class or profession (Code Prac. art. 644, as amended by Act No. 79 of 1876, and Act No. 184 of 1918).

Whether workman is laborer under garnishment statute (Code Prac. art. 644, as amended by Act No. 79 of 1876 and Act No. 184 of 1918) is determined by nature and character of work rather than class or profession to which laborer may belong; "laborer," under such statute, being unskilled laborer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Laborer.]

2. Exemptions ⬤➡48(3)—Wages of millwright doing carpenter work, held exempt from garnishment (Code Prac. art. 644, as amended by Act No. 79 of 1876, which repealed amendments in Act No. 39 of 1872; Civ. Code, art. 1992; Act No. 17 of 1874; Act No. 184 of 1918).

Wages of millwright, earned while doing manual labor as carpenter and exercising no skill or discretion of his own, *held* to be exempt from garnishment as those of laborer under Code Prac. art. 644, as amended by Act No. 79 of 1876, which repealed amendments in Act No. 39 of 1872, making it conform to Civ. Code, art. 1992, and in Act No. 17 of 1874, and by amendatory Act No. 184 of 1918.

On Motion to Amend Decree.

3. Certiorari ⬤➡69—Agreed damages, omitted from decree on certiorari by oversight of Supreme Court, will be allowed by amendment without rehearing.

Where proceedings in garnishment were reviewed by certiorari and garnishment quashed, but Supreme Court neglected to award attorney's fees and certain damages, which respondents had agreed to pay in event of such decree, it would award such fees and damages on motion to amend decree without granting rehearing, reserving right to respondents to apply for rehearing thereon.

Petition by Thomas S. Atkins for writ of certiorari to Hon. J. H. Stephens, Judge of First District Court, Parish of Caddo, to prevent enforcement of judgment in garnishment proceedings brought against petitioner by Groves & Rosenblath. Judgment in garnishment set aside, garnishment quashed, and seizure released and dismissed.

Crow & Coleman, of Shreveport, for relator.

T. Overton Brooks, of Shreveport, for respondent.

THOMPSON, J. In execution of a judgment which Groves & Rosenblath had obtained against relator in the city court of Shreveport for $32.25, one C. A. Hodges was garnisheed, and the sum of $32.25 which he owed relator was arrested in his hands and sought to be applied in satisfaction of the judgment against relator.

The relator took a rule on the seizing creditor to show cause why the garnishment should not be set aside, for the reason that the money due relator by Hodges represented his wages as a laborer, and therefore could not be seized for debt.

The rule in due course was put at issue and tried, and the claim of exemption was rejected.

On appeal to the district court that judgment was affirmed.

Whereupon the relator applied to this court for relief and to prevent the enforcement of the judgment against his wages.

It is admitted in the agreed statement of facts that the amount garnisheed in the hands of Hodges was wages due relator for labor performed as a carpenter, using the ordinary hammer, saw, and nails and other tools ordinarily used by carpenters; that said services were performed by him as an ordinary carpenter; that he received, or was to receive, $1 per hour, or $8 per day for eight working hours; that the services performed by relator were wholly performed as an employee or laborer by the hour; and that relator was in no sense a contractor, nor a subcontractor, nor an independent construction man; that relator received the orders from his employer and performed the work personally and with his own hands; and that he did not direct said work or the manner in which it was to be performed.

It follows from the foregoing statement of facts and admissions that the sole question presented for decision is whether or not the relator, in performing the services described and in the manner stated, was a laborer in the sense in which that word is used in the statute which exempts laborers' wages from seizure for debt.

The exemption is claimed under article 644 of the Code of Practice, as amended by Act 79 of 1876 and Act 184 of 1918.

It may be pertinent to observe that there was a conflict between the Code of Practice and the Civil Code as revised and adopted in 1870. The former (article 644) did not exempt any wages from seizure for debt, whereas the Civil Code (article 1992) not only exempted all wages and recompense for personal services from seizure, but went further and provided that no contract could be made or enforced respecting the exemption.

In 1872, however (Act 39) article 644 of the Code of Practice was amended so as to correspond with article 1992 of the Civil Code.

The article was again amended in 1874 (Act 17) in some particulars, but the provision exempting all wages and recompense for personal services was retained.

This exemption of all wages and recompense for all personal services existed until the Legislature passed Act 79 of 1876, which amended article 644 of the Code of Practice by adding other exemptions and omitting the words "recompense for personal services."

The last act repealed all laws or parts of laws in conflict with its provisions and all laws on the same subject-matter, and especially the prior amendments to article 644 of the Code of Practice.

The amendatory act 184 of 1918 retained the provision of the act of 1876 exempting laborers' wages from seizure.

It is worthy of note that the provisions of neither Code nor the amendatory acts prior to the one of 1876 made use of the word "laborer" in connection with or as qualifying the word "wages" or "recompense" for personal services.

The writing of the word "laborer" into the statute preceding the word "wages" was coincident with the omission of the word "recompense" for personal services.

There can be no mistake, therefore, that it was the purpose of the lawmaker to withdraw the general exemption of all wages and all recompense for personal services as existing up to the act of 1876, and thereafter to restrict the exemption to those workmen who in the proper use of the term could be classed as laborers.

In interpreting and applying the law as last amended, it became necessary for the courts to make a distinction between skilled and unskilled laborers, which was done in the cases hereafter referred to, and in which exemption was denied to the skilled workman or laborer.

Thus it has been held that the wages of a locomotive engineer, artisans, and other skilled mechanics are not within the statute of exemption. State ex rel. Grocery Co. v. Land, Judge, 32 So. 433, 108 La. 514, 58 L. R. A. 407, 92 Am. St. Rep. 392.

While on the other hand it has been held that a railroad switchman is a laborer in the sense of article 644 of the Code of Practice, as amended by Act 79 of 1876, exempting "laborers' *wages*" from seizure under execution. Schroeder v. Collins, 37 So. 722, 113 La. 778.

And a railroad's car repairer has been held to be a laborer whose wages are exempt from seizure within the meaning of the statute; he being one who works with his hands rather than with his head, and "subsisting by physical toil instead of professional skill, in the performance of manual labor, menial or physical exertion, labor, or toil." Cole v. Grant, Sheriff, 81 So. 398, 144 La. 916.

The relator was a millwright by trade, apprenticeship, and experience, but for the past several years he worked off and on as an ordinary carpenter, and the wages garnisheed were due for work performed and services rendered as an ordinary carpenter.

[1] The test to be applied in such cases in determining whether the workman is a laborer within the meaning of the statute is the nature and character of the work performed rather than the class or profession to which the laborer may belong.

A lawyer or a physician, as such, would not fall within the definition of a laborer, but, if the lawyer and physician laid aside their professional skill and engaged their personal services in harvesting a crop or in performing any other manual labor, they would quoad such services be classed as laborers and within the terms of the exemption.

[2] The fact, therefore, that relator was a millwright by profession did not affect his right of exemption as an ordinary carpenter when the services were rendered as such carpenter and not as a millwright.

Nor will it do to say that all carpenters as a class, because of their superior skill, training, and knowledge are not laborers within the sense in which that word is used.

There are skilled carpenters, and carpenters possessing very little skill. There are carpenters who perform labor as such without the use of their knowledge and skill.

The trained carpenter who merely plans and directs the work to be done by another could not be classed as an ordinary laborer and brought within the terms of exemption.

While on the other hand the carpenter, whether skilled or unskilled, who under the direction of his superior performs the actual work with his own hands, and without exercising and without the necessity of exercising any superior knowledge or skill, may very properly be termed a laborer within the meaning of the statute.

It requires no training and very little skill to rip a plank with a handsaw or to drive a nail with a hammer. If it was the degree of skill rather than the class of work which furnished the test as to whether the person was a laborer or not, the case would still be with the relator.

We prefer, however, to rest our decision in this case on the kind and nature of the work performed by relator in determining whether he was a laborer within the meaning of the statute, and not to lay down any general rule by which all carpenters would be brought within or all excluded from the provisions of the statute.

We have previously noted that relator worked under the direction of his employer.

He exercised no skill, discretion, or judgment of his own. He did the bidding of his employer, and had, so to speak, no independent mind of his own. His tools were a handsaw and hatchet.

His work was manual and laborious. He earned his living by the "sweat of his brow." He was a laborer, and his wages are exempt under the law.

The judgment of the city court of the city of Shreveport and that of the district court which denied the exemption are set aside; the garnishment of relator's wages is quashed, and the seizure released and dismissed.

It is further ordered that the seizing creditor pay all costs of said garnishment process and the trial thereof, including cost of this proceeding.

### On Motion to Amend Decree.

PER CURIAM. [3] Relator complains:

"That apparently, through inadvertence or oversight, the court failed to award relator judgment against plaintiff respondent for the sum of $33 for attorney's fees and loss of time incurred by defendant relator in procuring the dissolution of the writ of garnishment herein and obtaining the release from seizure of relator's wages.

"That in the agreed statement of facts on which this case was wholly submitted to the courts of both original and appellate jurisdiction, as well as to this honorable court under its supervisory jurisdiction, there is contained the following express agreement, to wit:

" 'In the event of the dissolution of said writ of garnishment, the defendant [relator here] is entitled to recover of plaintiff, Groves & Rosenblath, the sum of $25 for attorney's fees for procuring the dissolution of said writ and releasing the seizure thereunder, and the [further] sum of $8 for loss of time incurred by the defendant in employing counsel and attending court on the trial of said rule [to dissolve said writ].' "

Wherefore relator prays that our decree be amended accordingly; or, in the alternative, that a rehearing be granted for the purpose of making such amendment. .

The complaint of relator is well founded. Our failure to allow relator the sum so agreed upon was error.

And, since it was error manifest on the face of record not to have allowed the amount claimed, when we dissolved the writ of garnishment, such allowance being, under the agreement between the parties, the necessary consequence of our ruling herein, it follows that the error occurred through mere oversight or inadvertence (lapsus memoræ, lapsus mentis), and may therefore, like a clerical error (lapsus calami), be corrected without the necessity of granting a rehearing for that purpose. See American Nat. Bank v. Reclamation Oil Producing Co., 156 La. 652, 101 So. 10, citing State v. F. B. Williams Cypress Co., 61 So. 988, 132 La. 949, Ann. Cas. 1914D, 1290; Mahony v. Mahony, 41 La. Ann. 135, 5 So. 645.

But the amendment being adverse to the interests of the respondents, Groves & Rosenblath, the right will be reserved to them to apply for a rehearing thereupon, if so minded.

The decree herein handed down is therefore amended by adding thereto the following:

"It is further ordered that defendant, T. S. Atkins, do recover of plaintiffs, Groves & Rosenblath, the sum of $33 for attorney's fees and damages herein incurred."

And it is now ordered that, as thus amended, said decree be now made final; reserving, however, to the respondents, Groves & Rosenblath, the right to apply for a rehearing as to said amendment only.